**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:20-cv-00474-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

Page

# CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

    A.  The Asserted Patent Is Directed to Connection-Based Networks .................................. 2

    B.  The Accused Products Interface with Connectionless Networks ................................... 4

III.    LEGAL STANDARD ........................................................................................... 5

    A.  Direct Infringement ........................................................................................... 5

    B.  Induced and Contributory Infringement .................................................................. 6

IV.     ARGUMENT ...................................................................................................... 7

    A.  Plaintiff Has Not Plausibly Alleged That The Accused Products
        Interface With "Connection-Based Networks" ....................................................... 7

    B.  Plaintiff Has Not Plausibly Alleged That The Accused Products Map
        "Priorities" To "Service Interfaces" .................................................................... 8

    C.  Plaintiff Fails To State A Claim For Induced And Contributory
        Infringement .................................................................................................... 9

        1.  Plaintiff's indirect infringement claims fail without direct
            infringement .......................................................................................... 10

        2.  Plaintiff fails to allege the requisite knowledge for indirect
            infringement .......................................................................................... 10

        3.  Plaintiff fails to allege the requisite specific intent for induced
            infringement .......................................................................................... 12

        4.  Plaintiff fails to allege the requisite lack of substantial non-
            infringing uses for contributory infringement ................................................ 13

V.      CONCLUSION .................................................................................................. 13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter,*
620 F. App'x 934 (Fed. Cir. 2015) .................................................................................6, 12

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.,*
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..............................6, 7, 12

*Aguirre v. Powerchute Sports, LLC,*
No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ......................10, 11

*Amgen Inc. v. Coherus BioSciences Inc.,*
931 F.3d 1154 (Fed. Cir. 2019)........................................................................................7

*Artrip v. Ball Corp.,*
735 Fed. Appx. 708 (Fed. Cir. 2018) ............................................................................5, 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).........................................................................................................5

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.,*
C 11–04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012)............................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................5

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.,*
904 F. Supp. 2d 1260 (M.D. Fla. 2012)............................................................................11

*Commil USA, LLC v. Cisco Sys., Inc.,*
135 S. Ct. 1920 (2015)....................................................................................................6, 10

*De La Vega v. Microsoft Corp.,*
2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).....................................................................6, 7

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.,*
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018)........................................12

*DSU Med. Corp. v. JMS Co., Ltd.,*
471 F.3d 1293 (Fed. Cir. 2006).......................................................................................12

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.,*
909 F.3d 398 (Fed. Cir. 2018)...........................................................................................6, 10

*Fujitsu Ltd. v. Netgear Inc.,*
620 F.3d 1321 (Fed. Cir. 2010)........................................................................................7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)......................................................................................................6

*Hypermedia Navigation LLC v. Google LLC*,
  No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)...................12

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017).................................................................................6, 10

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ......................................................................................5

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)...........12

*Parus Holdings Inc. v. Apple Inc.*,
  No. 6:19-cv-432 (W.D. Tex. Feb. 20, 2020).............................................................11

*Proxyconn Inc. v. Microsoft Corp.*,
  No. SACV 11-1681-DOC-ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012)..................11

*The B.V.D. Licensing Corp. v. Body Action Design, Inc.*,
  846 F.2d 727 (Fed. Cir. 1988).....................................................................................4

*Xpoint Technologies, Inc. v. Microsoft Corp.*,
  730 F. Supp. 2d 349 (D. Del. 2010)...........................................................................11

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................................5

**Rules**

Fed. R. Evid. 201(b)........................................................................................................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '536 patent | U.S. Patent No. 7,212,536 |
| Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation |
| IP | Internet Protocol |
| QoS | Quality of Service |
| WSOU or Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

## I.      INTRODUCTION

Plaintiff has not plausibly alleged—and cannot plausibly allege—infringement in this case. The '536 patent describes and explicitly claims a **connection-based** network technology.  The complaint alleges infringement based on fundamentally different **connectionless** network technology.  Plaintiff fails to allege that the accused products interface with a "connection-based network" as explicitly required by every claim of the '536 patent and further fails to provide any facts upon which this limitation could be met.  This is unsurprising, as the very documents upon which Plaintiff relies directly contradict any such attempted allegation; instead, the documents make clear that the accused products operate on **connectionless** protocols.  Plaintiff's efforts to fit a round (connection-based) peg into a square (connectionless) hole should be rejected.

Similarly, the sole identified claim in the Complaint requires a mapping between a user priority from an incoming frame and a specific outgoing channel (in the connection-based network).  Plaintiff fails to even allege that such a mapping exists; nor could it, as the concepts recited in the claims have no meaning in a connectionless network.  Again, the documents upon which Plaintiff rely flatly contradict any such attempted allegation.

Plaintiff's indirect infringement claims are also fatally flawed.  It is axiomatic if there is no direct there cannot be indirect infringement.  Moreover, the indirect infringement allegations fail for additional reasons, including that they are based entirely on knowledge of the patent only as of the date of filing the Complaint, and that they fail to plead the requirements of induced and contributory infringement.

This is a textbook case for dismissal on the pleadings under *Iqbal* and *Twombly*.  Plaintiff's failure goes beyond mere failure to plead sufficient facts.  Not only has Plaintiff failed to plausibly

allege infringement, but its factual allegations, including the very documents upon which it relies, actually preclude its allegations of patent infringement.  This case should be dismissed.

## II.    BACKGROUND

### A.    The Asserted Patent Is Directed to Connection-Based Networks

The '536 patent, which is entitled "User priority mapping in bridged VLANs," relates to user priorities in a connection-based networks.  '536 patent, Abstract.  The patent purports to provide different service levels by assigning different channels in a ***connection-based network***. *Id*.  According to the patent, channels in the connection-based network may be assigned by providing a mapping between user priorities and channels.  *Id*.

Plaintiff asserts claim 1 in the Complaint:

1. Data handling apparatus for handling data frames which are each associated with one of a plurality of priorities, the apparatus comprising:

   [a] a bridge having a plurality of bridge ports, a first one of the bridge ports having a plurality of service interfaces, each of the ***service interfaces associated with a channel in a connection-based network***;

   [b] a map associated with the first one of the bridge ports, ***the map providing a correspondence between each of the plurality of priorities and one of the service interfaces***;

   [c] a forwarding system configured to read a priority of a data frame to be forwarded ***onto the connection-based network*** by way of the first one of the ports, identify a service interface which the ***map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface***.

*Id.*, cl. 1 (emphases added).

As explained in the "Background" section of the '536 patent, networking protocols "permit priorities (sometimes called 'user priorities') to be assigned to data.  Through the use of such networking protocols, data having different priority levels can be treated differently."  *Id.*, 1:48–51.  For example, the '536 patent explains that the prior art IEEE 802.1D protocol describes how

to map user priorities to different egress queues.  *Id.*, 1:54–56.  According to the patent, such an approach was not known for virtual Local Area Networks (VLANs), and there "is a need for ways to accommodate user priorities in VLANs."  *Id.*, 2:1–2.

The patent describes a VLAN as "a data communication network which comprises a number of segments which are connected together by links which operate according to a network protocol different from that of the network segments."  *Id.*, 1:17–22.  In the case of the claims, these links are bridges.  *Id.*, 1:26–27; cls. 1, 12, 17.  According to the patent, bridges "provide interfaces between ethernet segments [] and ***connection-based networks***."  *Id.*, 3:44–45 (emphasis added).  A "[c]onnection based network **14** provides channels (which may be virtual circuits) capable of carrying data between bridges."  *Id.*, 3:46–48.  Indeed, the term "connection-based network" is used over 40 times in the patent, including in every independent claim.  *See generally id.*

Figure 2 depicts the described bridge that interfaces with a connection-based network.



**FIGURE 2**

As depicted in Figure 2, for each bridge port (**26A**, **26B**, and **26C**), there are multiple different "service interfaces **30**."  Each of these interfaces is associated with a different channel **24** in a connection based network.  *Id.*, 4:54–57.  Based on the incoming priority, the bridge will assign a

frame to a particular channel in the connection-based network, and thus to a different service interface. *Id.*, 6:22–25.

**B.      The Accused Products Interface with Connectionless Networks**

Plaintiff has accused the Dell PowerConnect 5500 Series switches ("Accused Products") of allegedly infringing claim 1 of the '536 patent.  Compl. ¶ 13.  As described by the document cited in the Complaint, the Accused Products are network switches that support traffic using the Internet Protocol ("IP").  Rosenthal Decl., Ex. A (Dell Power Connect 5500 Series System User Guide) at 14–15.  IP is universally known to be the quintessential ***connectionless*** protocol.  *See* Rosenthal Decl., Ex. B (Dictionary of Networking 2000) at 199 (distinguishing between "connectionless IP and connection-oriented ATM").[1]

The Accused Products provide Quality of Service ("QoS") functionality to optimize network performance at a particular network interface.  Ex. A at 14–15.  QoS is used to assign a packet to a particular egress queue within an interface, but ***not*** to assign a packet to a particular interface.  Ex. A at 641.  Each interface has up to eight egress queues.  *Id*. at 646 ("The switch supports eight queues for each interface.").  The QoS functionality classifies the incoming traffic based on several different attributes, including device configuration, ingress interface, and packet contents.  *Id*. at 641.  ***After*** the Accused Products assign a packet to a specific interface, the Accused Products can assign each packet to a particular egress queue within the interface based

---

[1] *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *The B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) ("Courts may take judicial notice of facts of universal notoriety, which need not be proved, and whatever is generally known within their jurisdiction. To that end, dictionaries and encyclopedias may be consulted." (citations omitted)).

on that classification. *Id*. ("Assigns incoming packets to forwarding queues. Packets are sent to a particular queue for handling as a function of the traffic class to which they belong.").

## III.    LEGAL STANDARD

### A.    Direct Infringement

A complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it "fail[s] to state a claim upon which relief can be granted." The complaint must include more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must allege non-conclusory facts that make liability "plausible," meaning that they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Additionally, "under any pleading standard, a complaint must put a defendant 'on notice as to what he must defend.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (affirming district court's dismissal of complaint that used broad functional language copied from patent). Only those complaints which state a plausible claim for relief survive a motion to dismiss, and the reviewing court makes this determination by drawing on its "judicial experience and common sense." *Ashcroft*, 556 U.S. at 679; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."). For a claim of patent infringement, the alleged infringer can only be liable if it "makes, uses, offers to sell, or sells" the allegedly infringing product. *See* 35 U.S.C. § 271(a). This requires that the

plaintiff—at a minimum—plead facts that identify an allegedly infringing product and describe how that allegedly infringing product infringes. *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

### B.    Induced and Contributory Infringement

To plead indirect infringement, the complaint must first plead direct infringement by a third party. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same).

For both induced and contributory infringement, Plaintiff must plead facts to support "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, Plaintiff additionally must plead facts showing that the Defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Id.* at *7, *21. Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

For contributory infringement, Plaintiff must also plead "that the component has no substantial noninfringing uses, and [] that the component is a material part of the

invention." *Affinity Labs*, 2014 WL 2892285, at *8 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## IV.    ARGUMENT

Plaintiff has not alleged that the Accused Products meet the claim limitations because:  (1) the Accused Products do not have "service interfaces associated with a channel in a ***connection-based network***"; and (2) the Accused Products do not have a "map providing correspondence between each of the plurality of priorities and one of the service interfaces."  In view of its failure to identify any functionality that allegedly meets this limitation, Plaintiff cannot satisfy the *Iqbal/Twombly* standard.  *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming dismissal on the pleadings based on failure to state a plausible infringement theory); *De La Vega, 2*020 WL 3528411, at *6–7.

### A.    Plaintiff Has Not Plausibly Alleged That The Accused Products Interface With "Connection-Based Networks"

Plaintiff does not allege that the Accused Products meet the "connection-based network" limitation of asserted claim 1 (and required in every independent claim).[2]  "Connection-based networks" are fundamental to the alleged invention.  The limitation is recited in every independent claim, including multiple separate claim limitations in the sole Asserted Claim, claim 1.  '536 patent, cl. 1, elements [a] and [c].  Further underscoring the importance of a connection-based network, the term is used over 40 times throughout the specification.  *See generally id.*  Indeed, the entire purpose of the purported invention is to accommodate user priorities in a bridge to a ***connection-based network***.  '536 patent, Abstract, 2:6–25, 3:44–48.  As the patent recognized, there were already methods accommodating user priorities in, for example, IEEE standards (such

---

[2]  The same "connection-based network" limitation is in every other claim.

as IEEE 802.1D), which were not for connection-based networks and instead mapped "user priorities to service queues." *See* '536 patent, 1:48–57.[3]

In its Complaint, however, Plaintiff completely ignores the "connection-based network" limitations of the Asserted Claim.  Nowhere in the Complaint does Plaintiff allege that the Accused Products have "service interfaces associated with a channel in a ***connection-based network***." *See, e.g.*, Compl. ¶¶ 14–21.  Nor can it.  The Accused Products undisputedly do not interface with connection-based networks.  As is evident from the documents cited in the Complaint, the Accused Products are IP network switches.  Ex. A at 14–15.  IP is a ***connectionless*** protocol for ***connectionless*** networks—i.e., the exact opposite of the "connection-based network" required by the claims.  Ex. B at 199.  As such, Plaintiff did not allege, and cannot plausibly allege, that the accused connectionless switches meet the "connection-based network" limitation.  This alone mandates dismissal of the Complaint.

### B.     Plaintiff Has Not Plausibly Alleged That The Accused Products Map "Priorities" To "Service Interfaces"

Plaintiff has not alleged—and cannot allege—that the Accused Products map priorities to service interfaces.  Asserted claim 1 requires a "map providing a correspondence between each of the plurality of priorities and one of the service interfaces." '536 patent, cl. 1, element [b].  The claim further recites that the accused apparatus must "identify a service interface which the map

---

[3] *See* Rosenthal Decl., Ex. C (IEEE 802.1Q-1998) at Annex D (describing traffic between VLAN aware bridges across a "trunk link"); Rosenthal Decl., Ex. D (IEEE 802.1D-1998) at § 7.7.3 ("The Forwarding Process may provide more than one transmission queue for a given Bridge Port. Frames are assigned to storage queue(s) on the basis of their user_priority using a traffic class table that is part of the state information associated with each Port. The table indicates, for each possible value of user_priority, the corresponding value of traffic class that shall be assigned.  Values of user_priority range from 0 through 7.  Queues correspond one-to-one with traffic classes."). These prior art references are incorporated into the '536 patent, and thus are part of the pleadings. '536 patent, 1:38–57.

indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface." *Id.*, cl. 1, element [c]. In other words, the map must identify a correspondence between (A) the alleged priority and (B) a specific "service interface," which is associated with a "channel in the connection-based network." *See id.*, Fig. 3 (depicting the channels associated with a service interface that extend to the next bridge).

There is a fundamental difference between the required mapping and the accused QoS functionality.  The claims map priority to *specific interfaces*, whereas QoS maps priority to a queue *within an interface*.  In other words, the accused QoS has no effect on *which* interface is used; it can affect only *which queue within* a given interface is used.  The User Guide upon which Plaintiff relies in the Complaint explains that each interface has multiple queues.  Ex. A at 646. The QoS—which is the alleged priority—is used by the Accused Products to assign incoming packets "to a particular queue" *after* the packet has already been assigned to a particular interface. Ex. A at 641.  QoS is therefore used to assign a packet to a particular egress queue *within a single interface*.  This is just like IEEE 802.1D—which the patent acknowledges as prior art—that "map[s] user priorities to service *queues*." '536 patent, 1:56–57 (emphasis added).  The claims, on the other hand, plainly require that the map link the *user priority with a specific service interface*, not a queue *within* a service interface. *See* '536 patent, cl. 1.  As a result, Plaintiff has not alleged and cannot plausibly allege that the required mapping is met, requiring dismissal of the Complaint.

### C.    Plaintiff Fails To State A Claim For Induced And Contributory Infringement

Plaintiff's indirect infringement claims are also deficient and should be dismissed.  As an initial matter, Plaintiff's failure to plausibly allege direct infringement precludes its claims of induced and contributory infringement.  Beyond that failing, Plaintiff has failed to plead any

knowledge of the patent or knowledge of infringement *prior* to the filing of this action.  Plaintiff also fails to plead a specific intent to induce infringement.  And, Plaintiff has not pled, and cannot plead, that that there are no substantial non-infringing uses.  Each of these failures independently warrants dismissal of Plaintiff's indirect infringement allegations.

### 1.     Plaintiff's indirect infringement claims fail without direct infringement

Plaintiff's indirect infringement allegations are insufficient as a matter of law as Plaintiff fails to plausibly allege direct infringement.  *See supra* § [IV.A].  It is axiomatic that "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement . . . ." *Enplas*, 909 F.3d at 407 (citations omitted); *see also Intellectual Ventures*, 870 F.3d at 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement . . . .").  As a result, Plaintiff has also failed to adequately plead its claims of induced and contributory infringement and these claims should be dismissed.

### 2.     Plaintiff fails to allege the requisite knowledge for indirect infringement

Plaintiff's indirect infringement allegations also fail because they do not plead the required "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926.  As courts in this District have held, the knowledge requirements for indirect infringement require *pre-suit* knowledge.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement").

Despite this clear requirement, Plaintiff's sole allegation of knowledge of the patent is a conclusory statement that "Defendants have received notice and actual or constructive knowledge of the '536 Patent *since at least the date of service of this Complaint*."  Compl. ¶ 23 (emphasis

added).[4]  This Court has rejected identical allegations of knowledge.  For example, in *Parus* this Court dismissed indirect infringement claims where plaintiff's only allegation of knowledge of the patent was that "Defendant Apple has had knowledge of the '431 Patent ***since at least the filing of the original complaint***."  *Parus*, No. 6:19-cv-432, at D.I. 28 (Amended Compl.) ¶ 44; *see id.* at Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims).  Like the allegations in *Parus*, Plaintiff fails to allege pre-suit knowledge and thus fail to state a claim for indirect infringement.  *See id.*; *Aguirre*, 2011 WL 2471299, at *3; *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) ("Also, because notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in Global–Tech that an allegation of knowledge of the patent is required to state a claim for induced infringement.").[5]

---

[4]  Plaintiff's allegations of knowledge of infringement are likewise deficient as they allege such knowledge only "[s]ince at least the date of service of this Complaint."  Compl. ¶ 24; *see, e.g.*, *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where the only allegations of knowledge of infringement were that "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement of the claims of the '431 Patent." (D.I. 28 (Amended Compl.) ¶ 44)).

[5]  Other courts similarly have held that "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement."  *Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, C 11–04049 JW, 2012 WL 1030031, *4 (N.D. Cal. Mar. 22, 2012); *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681-DOC-ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012); *Brandywine*, 912 F. Supp. 2d at 1345 ("The weight of authority addressing the knowledge required for indirect infringement . . . requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit.").

### 3.      Plaintiff fails to allege the requisite specific intent for induced infringement

Plaintiff also entirely fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, *directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities*.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added)).  Plaintiff's allegations of specific intent amount to a single conclusory statement that Defendants "actively induced" others to infringe through it advertising and promotional materials and website citations. *See* Compl. ¶ 24.  Such conclusory allegations fail to present facts that demonstrate:  (1) Defendants knew that the alleged acts infringed, and (2) Defendants knew that the promotion of their products would induce or encourage others to infringe the Asserted Patent. *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *21 (finding "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient").  To support specific intent, Plaintiff must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—i.e., "evidence of culpable conduct, directed to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2.[6]

_____

[6] *See also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint." (emphasis in original)); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No.

Plaintiff's inducement claim should be dismissed because the Complaint is entirely silent on a key requirement of induced infringement.

### 4. Plaintiff fails to allege the requisite lack of substantial non-infringing uses for contributory infringement

Plaintiff's contributory infringement allegations also fail because Plaintiff did not "'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citations omitted). Plaintiff has not done so and cannot do so.  Plaintiff's only allegation on these elements is a conclusory statement that repeats the legal elements.  *See* Compl. ¶ 25.  As the Federal Circuit held in *Artrip*, conclusory allegations are not enough.  735 F. App'x at 713 (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use").  Furthermore, Plaintiff cannot plead facts to support these elements because the Accused Products may not be configured to use SNMP traps, which are central to Plaintiff's allegations.  Plaintiff's failure to raise a plausible inference of no substantial non-infringing uses and materiality is fatal to its contributory infringement claim, and as such it should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Complaint in its entirety for failure to plausibly state a claim for relief,

---

CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding mere citations to websites were insufficient to plead specific intent).

without leave to amend.  Pursuant to L.R. CV-7(h), Defendants request an oral hearing on the foregoing motion.

Dated:  October 5, 2020                    By:  */s/ Barry K. Shelton*
                                           _____
                                           Barry K. Shelton
                                           Texas State Bar No. 24055029
                                           bshelton@sheltoncoburn.com
                                           **SHELTON COBURN LLP**
                                           311 RR 620, Suite 205
                                           Austin, TX  78734-4775
                                           Telephone:  512.263.2165
                                           Facsimile:  512.263.2166

                                           Benjamin Hershkowitz
                                           bhershkowitz@gibsondunn.com
                                           Brian A. Rosenthal
                                           brosenthal@gibsondunn.com
                                           Allen Kathir
                                           akathir@gibsondunn.com
                                           Kyanna Sabanoglu
                                           ksabanoglu@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           200 Park Avenue
                                           New York, NY  10166-0193
                                           Telephone:  212.351.4000
                                           Facsimile:  212.351.4035

                                           Y. Ernest Hsin
                                           ehsin@gibsondunn.com
                                           Jaysen S. Chung
                                           jschung@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           555 Mission Street, Suite 3000
                                           San Francisco, CA  94105-0921
                                           Telephone:  415.393.8200
                                           Facsimile:  415.393.8306

                                           Ryan K. Iwahashi
                                           riwahashi@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           1881 Page Mill Road
                                           Palo Alto, CA  94304-1211
                                           Telephone:  650.849.5300
                                           Facsimile:  650.849.5333

                                           *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of October 2020, the foregoing was filed electronically in compliance with Local Rule CV-5(b)(1) and served via the Court's electronic filing system on all counsel who have consented to electronic service:

Brett Aaron Mangrum, Attorney for WSOU
brett@etheridgelaw.com

Jeffrey Huang, Attorney for WSOU
jhuang@etheridgelaw.com

Ryan Scott Loveless, Attorney for WSOU
ryan@etheridgelaw.com

Travis Lee Richins, Attorney for WSOU
travis@etheridgelaw.com

James L. Etheridge, Attorney for WSOU
jim@etheridgelaw.com

*/s/ Barry K. Shelton*
Barry K. Shelton