**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, <br><br> Defendants. | Case No. 6:20-cv-00474-ADA <br><br> **JURY TRIAL DEMANDED** |

## <u>DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM</u>

# TABLE OF CONTENTS

Page

I.     BACKGROUND ........................................................................................................2

       A.     The Asserted Patent Is Directed to Connection-Based Networks ............................2

       B.     The Accused Products Interface With Connectionless Networks ............................4

II.    LEGAL STANDARD ..............................................................................................5

       A.     Direct Infringement ................................................................................................5

       B.     Induced and Contributory Infringement ..................................................................6

III.   ARGUMENT ...........................................................................................................7

       A.     Plaintiff Has Not Plausibly Alleged That The Accused Products Interface
              with "Connection-Based Networks" ........................................................................8

       B.     Plaintiff Has Not Plausibly Alleged That The Accused Products Map
              "Priorities" To "Service Interfaces" .......................................................................9

       C.     Plaintiff Fails To State A Claim For Induced And Contributory
              Infringement ...........................................................................................................10

              1.     Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement....11

              2.     Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement .11

              3.     Plaintiff Fails to Allege the Requisite Specific Intent for Induced
                     Infringement...................................................................................................13

              4.     Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses
                     for Contributory Infringement .......................................................................14

IV.    CONCLUSION..........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) ...................................................................6, 14

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
  No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..................................7, 14

*Aguirre v. Powerchute Sports, LLC*,
  No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ..........................11

*Amgen Inc. v. Coherus BioSciences Inc.*,
  931 F.3d 1154 (Fed. Cir. 2019)......................................................................7

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ...................................................................6, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................5

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
  904 F. Supp. 2d 1260 (M.D. Fla. 2012)..............................................................13

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ........................................................................4

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015)................................................................................6, 11

*De La Vega v. Microsoft Corp.*,
  2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).................................................6, 7, 8

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
  No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).......................14

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)......................................................................13

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,
  C.A. No. 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020)....................12

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018)........................................................................6, 11

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010)..............................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011).................................................................................................7

*Hypermedia Navigation LLC v. Google LLC*,
   No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)..................14

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017)..........................................................................6, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ..............................................................................4, 8

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..................................................................................6

*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
   No. 6:14-CV-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015).........13

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019).....................13, 14

*Parus Holdings Inc. v. Apple Inc.*,
   No. 6:19-cv-432 (Feb. 20, 2020) ..........................................................................11

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681 DOC ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ...................12

*Simplivity Corp. v. Springpath, Inc.*,
   No. CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016)...............13

*The B.V.D. Licensing Corp. v. Body Action Design, Inc.*,
   846 F.2d 727 (Fed. Cir. 1988)................................................................................4

*VLSI Tech. LLC v. Intel Corp.*,
   C.A. No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019)......................12

**STATUTES**

35 U.S.C. § 271(a) ......................................................................................................6

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

### RULES

Fed. R. Evid. 201(b)............................................................................................................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '536 patent | U.S. Patent No. 7,212,536 |
| Accused Products | Force 10 Networks' MXL switches |
| Amended Complaint or Am. Compl. | First Amended Complaint For Patent Infringement (D.I. 34) |
| Defendants | Dell Technologies Inc., Dell Inc. and EMC Corporation |
| IP | Internet Protocol |
| Original Complaint or Original Compl. | Original Complaint For Patent Infringement (D.I. 1) |
| QoS | Quality of Service |
| WSOU or Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

## I.    INTRODUCTION

After Defendants identified the fundamental difference between the claimed ***connection-based*** network technology and the accused ***connection-less*** network technology, Plaintiff amended its complaint.  But Plaintiff still has not plausibly alleged infringement in this case, and cannot do so.  Despite Defendants' prior challenge on this basis, Plaintiff's Amended Complaint ***completely ignores*** the "connection-based network" limitation that is explicitly required by every claim of the '536 patent and fails to provide any facts upon which this limitation could be met.  This is unsurprising because the very documents on which Plaintiff relies on to show that the accused products use a connectionless network, *i.e.*, the ***opposite*** of what is claimed.

Similarly, the asserted claim requires a mapping between a user priority from an incoming frame and a specific outgoing channel in the connection-based network.  The Amended Complaint ***still*** fails to even allege that such a mapping exists; nor could it, as the concepts recited in the claims have no meaning in a connectionless network.  Since the documents on which Plaintiff relies demonstrate non-infringement, the Amended Complaint should be dismissed.

The indirect infringement allegations fare no better.  Plaintiff's Original Complaint alleged knowledge of the patent only as of the date of the Complaint, which this Court has repeatedly held is insufficient to sustain a claim of indirect infringement.  The Amended Complaint tries—and fails—to circumvent that clear rule by alleging knowledge based on a complaint Plaintiff earlier filed and dismissed before filing the present case.  Neither basis is sufficient; Plaintiff still has not adequately alleged pre-suit knowledge of the patent.  The indirect allegations also fail to allege other requisite elements of induced and contributory infringement.

This is a textbook case for dismissal on the pleadings under *Iqbal* and *Twombly*.  Defendant pointed out a critical deficiency in Plaintiff's allegations.  Plaintiff amended its complaint, but the

same fundamental problem remains.  Plaintiff's inability to address the deficiencies show that further opportunity to amend would be futile.  Indeed, the very documents upon which Plaintiff relies contradict any claim for infringement.  This case should be dismissed.

## II.     BACKGROUND

### A.      The Asserted Patent Is Directed to Connection-Based Networks

The '536 patent, which is entitled "User priority mapping in bridged VLANs," relates to user priorities in a connection-based networks.  '536 patent, Abstract.  The patent purports to provide different service levels by assigning different channels in a ***connection-based network***.  *Id.*  According to the patent, channels in the connection-based network may be assigned by providing a mapping between user priorities and channels.  *Id.*

Plaintiff asserts claim 1 in the Amended Complaint:

1. Data handling apparatus for handling data frames which are each associated with one of a plurality of priorities, the apparatus comprising:

> [a] a bridge having a plurality of bridge ports, a first one of the bridge ports having a plurality of service interfaces, each of the ***service interfaces associated with a channel in a connection-based network***;

> [b] a map associated with the first one of the bridge ports, ***the map providing a correspondence between each of the plurality of priorities and one of the service interfaces***;

> [c] a forwarding system configured to read a priority of a data frame to be forwarded ***onto the connection-based network*** by way of the first one of the ports, identify a service interface which the ***map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface***.

*Id.*, cl. 1 (emphases added).

As explained in the "Background" section of the '536 patent, networking protocols "permit priorities (sometimes called 'user priorities') to be assigned to data.  Through the use of such networking protocols, data having different priority levels can be treated differently."  *Id.*, 1:48–

51.  For example, the '536 patent explains that the prior art IEEE 802.1D protocol describes how to map user priorities to different egress queues.  *Id.*, 1:54–56.  According to the patent, such an approach was not known for virtual Local Area Networks (VLANs), and there "is a need for ways to accommodate user priorities in VLANs."  *Id.*, 2:1–2.

The patent describes a VLAN as "a data communication network which comprises a number of segments which are connected together by links which operate according to a network protocol different from that of the network segments."  *Id.*, 1:17–22.  In the case of the claims, these links are bridges.  *Id.*, 1:26–27; cls. 1, 12, 17.  According to the patent, bridges "provide interfaces between ethernet segments [] and ***connection-based networks***."  *Id.*, 3:44–45 (emphasis added).  A "[c]onnection based network **14** provides channels (which may be virtual circuits) capable of carrying data between bridges."  *Id.*, 3:46–48 (emphasis added).  Indeed, the term "connection-based network" is used over 40 times in the patent, including in every independent claim.  *See generally id.*

Figure 2 depicts the described bridge that interfaces with a connection-based network.



**FIGURE 2**

As depicted in Figure 2, for each bridge port (**26A**, **26B**, and **26C**), there are multiple different "service interfaces **30**."  Each of these interfaces is associated with a different channel **24** in a connection-based network.  *Id.*, 4:54–57 (emphasis added).  Based on the incoming priority, the

3

bridge will assign a frame to a particular channel in the connection-based network, and thus to a different service interface.  *Id.*, 6:22–25.

###    B.    The Accused Products Interface With Connectionless Networks

Plaintiff has accused the Dell PowerConnect 5500 Series switches ("Accused Products") of allegedly infringing claim 1 of the '536 patent.  Am. Compl., ¶ 13.  As described by the document cited in the Amended Complaint, the Accused Products are network switches that support traffic using the Internet Protocol ("IP").  Rosenthal Decl., Ex. A (Dell Power Connect 5500 Series System User Guide) at 14–15.[1]  IP is universally known to be the quintessential ***connectionless*** protocol.  *See* Rosenthal Decl., Ex. B (Dictionary of Networking 2000) at 199 (distinguishing between "connectionless IP and connection-oriented ATM").[2]

The Accused Products provide Quality of Service ("QoS") functionality to optimize network performance at a particular network interface.  Ex. A at 14–15.  QoS is used to assign a packet to a particular egress queue within an interface, but ***not*** to assign a packet to a particular interface.  Ex. A at 641.  Each interface has up to eight egress queues.  *Id.* at 646 ("The switch supports eight queues for each interface.").  The QoS functionality classifies the incoming traffic based on several different attributes, including device configuration, ingress interface, and packet

---

[1] The Dell Power Connection 5500 Series System User Guide was incorporated into the Complaint.  Am. Compl., ¶¶ 13–20; *see Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000))).

[2] *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *The B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) ("Courts may take judicial notice of facts of universal notoriety, which need not be proved, and whatever is generally known within their jurisdiction.  To that end, dictionaries and encyclopedias may be consulted." (citations omitted)).

contents.  *Id.* at 641.  ***After*** the Accused Products assign a packet to a specific interface, the Accused Products can assign each packet to a particular egress queue within the interface based on that classification.  *Id.* ("Assigns incoming packets to forwarding queues.  Packets are sent to a particular queue for handling as a function of the traffic class to which they belong.").

Plaintiff's indirect infringement allegations in its Original Complaint amounted to three sentences that parrot the legal elements and two website links that fail to support Plaintiff's claims.  *See* Original Compl. ¶¶ 23–25.  Those allegations completely failed to allege that Defendants had knowledge of the patent and knowledge of the infringement ***before*** Plaintiff filed suit.  *See id.*

Plaintiff's Amended Complaint fails to fix the deficiencies in the Original Complaint.  Plaintiff now alleges knowledge of the patent based on the filing, and dismissal, of an earlier complaint—which was not served—asserting the same patent.  *See* Am. Compl. ¶ 24; Rosenthal Decl., Ex. E (Redline comparison of Original and Amended Complaint).

## III.   LEGAL STANDARD

### A.   Direct Infringement

A complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it "fail[s] to state a claim upon which relief can be granted."  The complaint must include more than "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must allege non-conclusory facts that make liability "plausible," meaning that they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).  Additionally, "under any pleading

standard, a complaint must put a defendant 'on notice as to what he must defend.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (affirming district court's dismissal of complaint that used broad functional language copied from patent).  Only those complaints which state a plausible claim for relief survive a motion to dismiss, and the reviewing court makes this determination by drawing on its "judicial experience and common sense." *Ashcroft*, 556 U.S. at 679; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.").  For a claim of patent infringement, the alleged infringer can only be liable if it "makes, uses, offers to sell, or sells" the allegedly infringing product.  *See* 35 U.S.C. § 271(a).  This requires that the plaintiff—at a minimum—plead facts that identify an allegedly infringing product and describe how that allegedly infringing product infringes.  *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

### B.      Induced and Contributory Infringement

To plead indirect infringement, the complaint must first plead direct infringement by a third party.  *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same).

For both induced and contributory infringement, plaintiff must also plead facts to support an inference of each defendant's "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, Plaintiff additionally must plead facts showing that each

defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014).   The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Id.* at *7, *21.  Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

For contributory infringement, Plaintiff must also plead "that the component has no substantial noninfringing uses, and [] that the component is a material part of the invention." *Affinity Labs*, 2014 WL 2892285, at *8 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## IV.   ARGUMENT

Even after amending its complaint, Plaintiff has still not plausibly alleged that the Accused Products meet the claim limitations because the Amended Complaint demonstrates that:  (1) the Accused Products do not have "service interfaces associated with a channel in a ***connection-based network***"; and (2) the Accused Products do not have a "map providing correspondence between each of the plurality of priorities and one of the service interfaces."  In view of its continued failure to identify any functionality that allegedly meets these limitations, Plaintiff cannot satisfy the *Iqbal/Twombly* standard.  *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming dismissal on the pleadings based on failure to state a plausible infringement theory); *De La Vega*, 2020 WL 3528411, at *6–7 (emphasis added).  Further opportunity to amend would be futile because the Accused Products simply do not meet these limitations.

**A.**    **Plaintiff Has Not Plausibly Alleged That The Accused Products Interface With "Connection-Based Networks"**

Plaintiff does not even allege that the Accused Products meet the "connection-based network" limitation of asserted claim 1 (and required in every independent claim). "Connection-based networks" are fundamental to the alleged invention. The limitation is recited in every independent claim, including multiple separate claim limitations in the sole Asserted Claim, claim 1. '536 patent, cl. 1, elements [a] and [c]. Further underscoring the importance of a connection-based network, the term is used over 40 times throughout the specification. *See generally id.* Indeed, the entire purpose of the purported invention is to accommodate user priorities in a bridge to a **connection-based network**. '536 patent, Abstract, 2:6–25, 3:44–48. As the patent recognized, there were already methods accommodating user priorities in, for example, IEEE standards (such as IEEE 802.1D), which were not for connection-based networks and instead mapped "user priorities to service queues." *See* '536 patent, 1:48–57.[3]

In its Amended Complaint, however, Plaintiff **completely ignores** the "connection-based network" limitation. The word "connection" is entirely absent from the Amended Complaint. Nowhere does Plaintiff allege that the Accused Products have "service interfaces associated with a channel in a **connection-based network**." *See, e.g.*, Compl. ¶¶ 14–21. Nor can it. The Accused Products indisputably do not interface with connection-based networks. As is evident from the

---

[3] *See* Rosenthal Decl., Ex. C (IEEE 802.1Q-1998) at Annex D (describing traffic between VLAN aware bridges across a "trunk link"); Rosenthal Decl., Ex. D (IEEE 802.1D-1998) at § 7.7.3 ("The Forwarding Process may provide more than one transmission queue for a given Bridge Port. Frames are assigned to storage queue(s) on the basis of their user_priority using a traffic class table that is part of the state information associated with each Port. The table indicates, for each possible value of user_priority, the corresponding value of traffic class that shall be assigned. Values of user_priority range from 0 through 7. Queues correspond one-to-one with traffic classes."). These prior art references are incorporated into the '536 patent, and thus are part of the pleadings. '536 patent, 1:38–57; *see Lone Star*, 594 F.3d at 387.

documents cited in the Amended Complaint, the Accused Products are IP network switches.  Ex.

A at 14–15.   IP is a protocol for **connectionless** networks—*i.e.*, the exact **opposite** of the

"connection-based network" required by the claims.  Ex. B at 199.   As such, Plaintiff did not

allege, and cannot plausibly allege, that the accused connectionless switches meet the "connection-

based network" limitation.  This alone mandates dismissal of the Amended Complaint.

 **B.**  **Plaintiff Has Not Plausibly Alleged That The Accused Products Map "Priorities" To "Service Interfaces"**

 Plaintiff has not alleged—and cannot allege—that the Accused Products map priorities to

service interfaces.  Asserted claim 1 requires a "map providing a correspondence between each of

the plurality of priorities and one of the service interfaces."  '536 patent, cl. 1, element [b].  The

claim further recites that the accused apparatus must "identify a service interface which the map

indicates corresponds to the read user priority and forward the data frame over the channel in the

connection-based network associated with the identified service interface."  *Id.*, cl. 1, element [c].

In other words, the map must identify a correspondence between (A) the alleged priority and (B)

a specific "service interface," which is associated with a "channel in the connection-based

network."  *See id.*, Fig. 3 (depicting the channels associated with a service interface that extend to

the next bridge).

 There is a fundamental difference between the required mapping and the accused QoS

functionality.  The claims map priority to **specific interfaces**, whereas QoS maps priority to a

queue **within an interface**.  In other words, the accused QoS has no effect on **which** interface is

used; it can affect only **which queue within** a given interface is used.  The User Guide upon which

Plaintiff relies in the Amended Complaint explains that each interface has multiple queues.  Ex. A

at 646.  The QoS—which is the alleged priority—is used by the Accused Products to assign

incoming packets "to a particular queue" **after** the packet has already been assigned to a particular

interface.  Ex. A at 641.  QoS is therefore used to assign a packet to a particular egress queue ***within a single interface***.  Indeed, that document explains that each interface can have its own mapping.  *Id.* at 668 ("[E]ach port is bound with, at most, one policy map."); Am. Compl., ¶ 17.  This is just like IEEE 802.1D—which the patent acknowledges as prior art—that "map[s] user priorities to service ***queues***." '536 patent, 1:56–57 (emphasis added).  The claims, on the other hand, plainly require that the map link the ***user priority with a specific service interface***, not a queue ***within*** a service interface.  *See* '536 patent, cl. 1.

In the Amended Complaint, Plaintiff added an allegation that the Accused Products "provide configurations at the subinterface level (*i.e.*, another level of interface configuration mode)."  Am. Compl., ¶ 16.  This allegation, however, simply states that there may be certain configurations that can be applied at a subinterface level.  It has nothing to do with Plaintiff's allegations related to QoS because the same document makes clear that "[a] single QoS mode is selected and ***applies to all interfaces*** in the system."  Ex. A at 641 (emphasis added).

As a result, Plaintiff has not alleged and cannot plausibly allege that the required mapping is met, requiring dismissal of the Amended Complaint.

### C.      Plaintiff Fails To State A Claim For Induced And Contributory Infringement

Plaintiff's indirect infringement claims are deficient and should be dismissed.  As an initial matter, Plaintiff's failure to plausibly allege direct infringement precludes its claims of induced and contributory infringement.  Beyond that failing, Plaintiff has further failed to adequately plead any pre-suit knowledge by Defendants of the patent, or pre-suit knowledge by Defendants of alleged infringement.  Plaintiff also fails to plead a specific intent to induce infringement.  And Plaintiff has not pled, and cannot plead, that there are no substantial non-infringing uses.  Each of these failures independently warrants dismissal of Plaintiff's indirect infringement allegations.

### 1. Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement

Plaintiff's indirect infringement allegations are insufficient as a matter of law as Plaintiff fails to plausibly allege direct infringement. *See supra* § IV.A. It is axiomatic that "'[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement.'" *Enplas*, 909 F.3d at 407 (citation omitted); *see also Intellectual Ventures*, 870 F.3d at 1329 ("A finding of direct infringement is predicate to any finding of indirect infringement . . ."). As a result, Plaintiff has also failed to adequately plead its claims of induced and contributory infringement, and these claims should be dismissed.

### 2. Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement

Plaintiff's indirect infringement claims fail because they do not adequately plead the required "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA*, 135 S. Ct. at 1926. As courts in this District have held, the knowledge requirements for indirect infringement require **pre-suit** knowledge. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement"). Moreover, this Court has held—earlier this year—that allegations of knowledge based on a prior filed complaint are not enough to overcome a motion to dismiss. *See Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54 (dismissing indirect infringement claims where plaintiff's only allegation of knowledge were that "Defendant Apple has had knowledge of the '431 Patent since *at least the filing of the original complaint*" and "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement") (quoting D.I. 28 (Am. Compl.) at ¶ 44 (emphasis added)).

The Amended Complaint includes an erroneous footnote that attempts to distinguish *Aguirre* by asserting that "Delaware courts have since rejected this rule."  Am. Compl. ¶ 24, n.1.  Plaintiff's statement that Delaware has rejected the pre-suit knowledge requirement is incorrect.  *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) ("[T]he complaint itself cannot serve as the basis for a defendant's actionable knowledge."); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, C.A. No. 19-1239-CFC, 2020 WL 4365809, at *2 (D. Del. July 30, 2020) ("'The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim.  For that reason, the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement.'") (citation omitted).  In any event, *this* Court has expressly adopted the pre-suit knowledge requirement, and continues to do so.  *See, e.g.*, *Parus*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54.

Despite this clear precedent, Plaintiff's only allegations of knowledge are based on the filing of its prior complaint asserting the same patent, which it inexplicably dismissed:

> **In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products** that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  **As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case**.  Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.

Am. Compl. ¶ 24 (emphases added).  Like the allegations in *Parus*, WSOU's allegations of knowledge are limited to references to a prior filed complaint and thus fail to state a claim for indirect infringement.  *See id.*; *Parus*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54.[4]  To make matters worse, Plaintiff's May 19, 2020 complaint was ***never served***, so it

---

[4] *See also Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("[A] complaint fails to state a claim for indirect patent infringement where the only allegation that purports to establish the knowledge element is the

cannot form the basis for Defendants' knowledge.  *See* Rosenthal Decl., Ex. F (Docket for *WSOU v. Dell Inc., et al.*, No. 6-20-cv-00404) (showing dismissal prior to service of the complaint). Allowing Plaintiff to avoid the pre-suit knowledge requirement by filing a complaint, voluntarily dismissing that complaint, and refiling the same complaint two weeks later, would be at odds with the knowledge requirement itself.[5]  And, it would elevate form over substance and encourage litigants to use such a tactic to essentially eviscerate the pre-suit knowledge requirement.

Plaintiff's failure to raise a plausible inference of pre-suit knowledge of the patent and knowledge of infringement are fatal to its indirect infringement claims, and as such these claims should be dismissed.

### 3. Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement

Plaintiff also entirely fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'"  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d

---

allegation that the complaint itself ***or previous complaints in the same lawsuit establish the defendant's knowledge of the patent***") (emphasis added); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-CV-1017-ORL-22, 2015 WL 1246500, at *9 (M.D. Fla. Mar. 16, 2015) ("'Prior to suit' does not mean prior to the current iteration of the Complaint.").

[5] *See, e.g.*, *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) ("[B]ecause notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in *Global–Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement."); *Simplivity Corp. v. Springpath, Inc.*, No. CV 4:15-13345-TSH, 2016 WL 5388951, at *8 (D. Mass. July 15, 2016) ("The suggested 'knowledge via filing' framework dilutes the knowledge requirement to the point of meaninglessness, since by virtue of being sued for infringement, a party necessarily is aware of the patent-in-suit.")

1293, 1306 (Fed. Cir. 2006)).   Plaintiff's allegations of specific intent amount to a single conclusory statement that Defendants "actively induced" others to infringe through their advertising, promotional materials, and two website citations.   *See* Am. Compl. ¶ 25.   Such conclusory allegations fail to present facts that demonstrate:  (1) Defendants knew that the alleged acts would infringe, and (2) Defendants knew that the promotion of their products would induce or encourage others to infringe the Asserted Patent.   *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *21 (finding Plaintiff's "generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient").   To support specific intent, Plaintiff must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—*i.e.*, "evidence of culpable conduct, direct to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2.[6]

Plaintiff's inducement claim should be dismissed because the Amended Complaint is entirely silent on a key requirement of induced infringement.

### 4.    Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses for Contributory Infringement

Plaintiff's contributory infringement allegations also fail because Plaintiff did not "'plead facts that allow an inference that the components sold or offered for sale have no substantial non-

---

[6] *See also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint.") (emphasis in original); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding mere citations to websites were insufficient to plead specific intent).

infringing uses.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citation omitted). Plaintiff has not pled a lack of substantial non-infringing uses because it cannot do so. Plaintiff's only allegation on these elements is a conclusory statement that repeats the legal elements. *See* Am. Compl. ¶ 26. As the Federal Circuit held in *Artrip*, conclusory allegations are not enough. 735 F. App'x at 713 (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use"). Furthermore, Plaintiff cannot plead facts to support these elements because the Accused Products may be configured to not use QoS Advanced Mode, which is central to Plaintiff's infringement allegations. In fact, this feature is not enabled by default. Plaintiff's failure to raise a plausible inference of no substantial non-infringing uses is fatal to its contributory infringement claim, and as such it should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Amended Complaint in its entirety for failure to plausibly state a claim for relief, without leave to amend. Pursuant to L.R. CV-7(h), Defendants request an oral hearing on the foregoing motion.

Dated:  October 30, 2020

By:  */s/ Barry K. Shelton*
      Barry K. Shelton
      Texas State Bar No. 24055029
      bshelton@sheltoncoburn.com
      **SHELTON COBURN LLP**
      311 RR 620, Suite 205
      Austin, TX  78734-4775
      Telephone:  512.263.2165
      Facsimile:  512.263.2166

      Benjamin Hershkowitz
      bhershkowitz@gibsondunn.com
      Brian A. Rosenthal
      brosenthal@gibsondunn.com
      Allen Kathir
      akathir@gibsondunn.com
      Kyanna Sabanoglu
      ksabanoglu@gibsondunn.com
      **GIBSON, DUNN & CRUTCHER LLP**
      200 Park Avenue
      New York, NY  10166-0193
      Telephone:  212.351.4000
      Facsimile:  212.351.4035

      Y. Ernest Hsin
      ehsin@gibsondunn.com
      Jaysen S. Chung
      jschung@gibsondunn.com
      **GIBSON, DUNN & CRUTCHER LLP**
      555 Mission Street, Suite 3000
      San Francisco, CA  94105-0921
      Telephone:  415.393.8200
      Facsimile:  415.393.8306

      Ryan K. Iwahashi
      riwahashi@gibsondunn.com
      **GIBSON, DUNN & CRUTCHER LLP**
      1881 Page Mill Road
      Palo Alto, CA  94304-1211
      Telephone:  650.849.5300
      Facsimile:  650.849.5333

      *Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on October 30, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
