## CIN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:20-cv-00474-ADA |
| Plaintiff, | |
| v. | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | |
| Defendants. | |

## DEFENDANTS' OPPOSED MOTION FOR INTRA-DISTRICT TRANSFER OF VENUE TO THE AUSTIN DIVISION OF THE WESTERN DISTRICT OF TEXAS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 1

III.   LEGAL STANDARDS ............................................................................................... 3

IV.    ARGUMENT ............................................................................................................... 5

      A.     WSOU Could Have Filed This Case in the Austin Division .................................. 5

      B.     The Austin Division Is Clearly More Convenient than the Waco Division ........... 5

            1.     Factors Clearly Favoring Transfer ............................................................. 6

            2.     Neutral Factors ......................................................................................... 10

V.     CONCLUSION.......................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.,*
    No. 6:15-CV-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ........................................4

*Bascom v. Maxim Integrated Prod., Inc.,*
    534 F. Supp. 2d 700 (W.D. Tex. 2008)...................................................................................4

*Chase v. Andeavor Logistics, L.P.,*
    No. 5:18-CV-1050-DAE, 2019 WL 5847879 (W.D. Tex. July 9, 2019) ..................................4

*Datascape, Ltd. v. Dell Techs., Inc.,*
    No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) .............4, 5, 6, 9, 10

*Gen. Elec. Capital Corp. v. Sweet Ventures, LLC,*
    No. EP-09-CV-253-DB, 2009 WL 10669384 (W.D. Tex. Dec. 4, 2009) .................................4

*In re Genentech, Inc.,*
    566 F.3d 1338 (Fed. Cir. 2009)................................................................................................6

*In re Horseshoe Entm't,*
    337 F.3d 429 (5th Cir. 2003) ...................................................................................................4

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.,*
    No. 1:14-CV-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014) ..................................9

*Moskowitz Family LLC. v. Globus Med., Inc.,*
    No. 6:19-CV-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020)........................6, 7, 9

*Parus Holdings Inc. v. LG Elecs. Inc.,*
    No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)............................7

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ...............................................................................................4, 9

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ...................................................................................................4

*XY, LLC v. Trans Ova Genetics, LC,*
    No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) .................................5

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................................................3

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Document(s) |
|---|---|
| '536 Patent | U.S. Patent No. 7,212,536 |
| Amended Complaint or Am. Compl. | Amended Complaint (D.I. 33) |
| Dell or Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation |
| WSOU or Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

# TABLE OF EXHIBITS[1]

| Exhibit | Description |
|---|---|
| **Ex. 1** | WSOU Entity Details at Delaware Department of State, https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (last accessed Nov. 3, 2020) |
| **Ex. 2** | '536 Patent Assignment Agreement, http://legacy-assignments.uspto.gov/assignments/assignment-pat-45085-1.pdf (last accessed Nov. 4, 2020) |
| **Ex. 3** | Example Assignment from Alcatel Lucent to WSOU Investments, http://legacy-assignments.uspto.gov/assignments/assignment-pat-44000-53.pdf (last accessed Nov. 3, 2020) |
| **Ex. 4** | LinkedIn Profile of Stuart A. Shanus, https://www.linkedin.com/in/stuart-a-s-60a7695/ (last accessed Nov. 3, 2020) |
| **Ex. 5** | LinkedIn Profile of Craig Etchegoyen, https://www.linkedin.com/in/craig-etchegoyen-aa8a07199/ (last accessed Nov. 3, 2020) |
| **Ex. 6** | Wade and Company Contact Information, http://www.wadeandcompany.com/#contact (last accessed Nov. 3, 2020) |
| **Ex. 7** | Aqua Licensing Press Release, https://www.businesswire.com/news/home/20180207005651/en/AQUA-Licensing-to-Manage-Sale-of-Second-Large-Portfolio-of-Former-Nokia-and-Alcatel-Lucent-Telecommunications-Patents (last accessed Nov. 3, 2020) |
| **Ex. 8** | Brazos Licensing About, https://www.brazoslicensing.com/about (last accessed Nov. 3, 2020) |
| **Ex. 9** | Excerpt from File History of '536 Patent |
| **Ex. 10** | Google Flights (from Vancouver) |
| **Ex. 11** | '536 Patent Assignment Record, https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=7212536&type=patNum (last accessed Nov. 3, 2020) |
| **Ex. 12** | Google Flights (from San Francisco) |
| **Ex. 13** | U.S. Patent No. 6,459,698 |
| **Ex. 14** | AMD Locations, https://www.amd.com/en/corporate/locations (last accessed Nov. 4, 2020) |
| **Ex. 15** | Google Flights (from Los Angeles) |
| **Ex. 16** | Google Flights (from Hawaii) |

---

[1] Exhibits are attached to the Declaration of Brian A. Rosenthal in Support of Defendants' Opposed Motion for Intra-District Transfer of Venue to the Austin Division of the Western District of Texas.

Defendants seek an intra-district transfer to the Austin Division under 28 U.S.C. § 1404(a) because this case has no relevant meaningful connection to the Waco Division, the case could have been brought in the Austin Division and the Austin Division is clearly more convenient.

## I.  INTRODUCTION

Dell embodies the Austin / Round Rock area and is proud of its Austin roots and ties to the Austin / Round Rock community.  Since its origins over thirty-five years ago, in a dorm room at the University of Texas in Austin, Dell has been headquartered in the Austin Division of the Western District of Texas.[2]  WSOU, meanwhile, is a relatively new limited liability company, with only a marginal connection to Texas—Waco is listed as the principal place of business for WSOU's recently created trade name "Brazos Licensing and Development."  Indeed, before this lawsuit, WSOU's actions relevant to the Asserted Patent, such as its acquisition, valuation, and monetization attempts, occurred *before* WSOU established any presence in Waco, and by WSOU individuals who did not, and still do not, appear to live or work in Texas, much less in Waco. Because Austin is clearly a more convenient venue than Waco, Dell seeks an intra-district transfer of venue to the Austin Division.

## II.  BACKGROUND

Dell's roots and ties to the Austin community are long-standing.  Dell's headquarters are in Round Rock, and Dell employs over 14,000 people in the Austin / Round Rock area.  *See* Crantz Decl. ¶ 5.  Dell, however, does not have any facilities in the Waco division of the Western District of Texas.  *Id.* ¶ 8.

---

[2]  Similarly, since Dell acquired Defendant EMC Corporation in 2016, its principal place of business has been in the Austin Division.  *See* Am. Compl. ¶ 5.  Defendant Dell Technologies Inc. was formed in 2016 as a result of that acquisition, and its principal place of business is also in the Austin Division.  *Id.* ¶ 3.

In contrast to Dell's deep Austin roots, WSOU's ties to Waco are fleeting and unrelated to *this action*.[3]  As it pertains to the Asserted Patent, WSOU did *not* employ the named inventors at the time of the purported invention and did *not* research or develop the claimed technology. Indeed, WSOU did *not* exist as a company when the Asserted Patent was filed and prosecuted before the Patent and Trademark Office.  Rather, WSOU is a company primarily focused on licensing and monetization of old patents acquired from other companies and none of the named inventors are based, nor was research related to the Asserted Patent performed, in Waco.

WSOU was created in 2017, *see* Ex. 1 (WSOU Entity Details),[4] and during its infancy, WSOU engaged primarily in one activity: the acquisition of old Alcatel-Lucent patents.  When WSOU purchased patents, including the Asserted Patent, from Alcatel-Lucent over the course of 2017, it was still more than two years away from any activity in Texas, let alone the Western District of Texas.  Tellingly, WSOU's principal address was listed as 11150 Santa Monica Boulevard, Suite 1400, Los Angeles, CA 90025.  *See* Ex. 2 ('536 Patent Assignment Agreement) at 9.

WSOU's patent acquisition spree, including its purchase of the Asserted Patent, also primarily involved two individuals: Stuart Shanus, the President of WSOU, *see id.* at 10, and Craig Etchegoyen, *see* Ex. 3 (Example Assignment Record) at 88.  Neither of these individuals appears

---

[3]  To be sure, Defendants acknowledge that WSOU leases office space in Waco and is now trying to involve itself (though without yet any tangible results) in the Waco community.  As explained in this motion, however, those actions are irrelevant to the Asserted Patent, which was acquired from another company, and the value paid for that patent—activities that took place before WSOU ever established a presence in Texas and conducted by individuals who did not, and *still* do not, appear to have a presence in Texas.

[4]  WSOU also has ties to Wade & Company, a venture capital firm with a listed address in Newport Beach, California.  *See* Ex. 6 (Wade & Company Contact Information).  Some of the patents in WSOU's portfolio were initially acquired by Wade & Company, and then assigned to WSOU.  *See* Ex. 3 (Example Assignment from Wade & Company to WSOU) at 88.  Later acquisitions went directly to WSOU.  *See, e.g.*, Ex. 2 ('536 Patent Assignment Agreement) at 9.

to live in Texas.  Mr. Shanus lists his residence as Los Angeles, California, *see* Ex. 4 (LinkedIn page of Mr. Shanus), and Mr. Etchegoyen lists his as Kailua-Kona, Hawaii, *see* Ex. 5 (LinkedIn page of Mr. Etchegoyen).  And none of the assignment records filed with the Patent and Trademark Office stated that the assignments would be construed and enforced in accordance with the laws of the State of Texas.  *See, e.g.*, Ex. 2 ('536 Patent Assignment Agreement).

After acquiring the patent portfolio, in 2018, WSOU appears to have pivoted to attempting to monetize the patents—but even at that point, WSOU did not appear to have a presence in Texas.  Rather, WSOU hired Aqua Licensing, a San Francisco, California company, to sell the patents. *See* Ex. 7 (Press Release Discussing Attempts to Sell Patents).

Suddenly in 2020, WSOU decided to chart a different path.  In January 2020, Mr. Shanus registered WSOU to do business in Texas, and a few weeks later registered WSOU's alias "Brazos Development and Licensing."   Brazos Licensing appears to have only four employees: Mr. Etchegoyen (Chairman and Founder), Mr. Shanus (President), Aaron Garvey (Head of Finance), and Matt Hogan (Business Development).   *See* Ex. 8 (Brazos Licensing About Webpage). Importantly, Mr. Etchegoyen, the individual who seemingly deals with WSOU's licensing of its patent portfolio, does not live in Texas.  In fact, the only individual who appears to have a Waco presence is Mr. Hogan, and his duties appear to be unrelated to WSOU's licensing activities of its patents acquired from Alcatel-Lucent.  *See id.*

Thus, WSOU's presence in Waco—to the extent it has one—appears unrelated to issues relevant to *this lawsuit*, namely non-infringement, invalidity, and value of the Asserted Patent.

## III.   LEGAL STANDARDS

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   The purpose of section 1404(a) "is to prevent the waste of

3

time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Gen. Elec. Capital Corp. v. Sweet Ventures, LLC*, No. EP-09-CV-253-DB, 2009 WL 10669384, at *2 (W.D. Tex. Dec. 4, 2009).

In deciding whether to transfer a case, the Court conducts a two-step analysis. *See Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *3 (W.D. Tex. Jan. 28, 2016). First, the Court decides whether the civil action could have been brought in the destination forum. *See Chase v. Andeavor Logistics, L.P.*, No. 5:18-CV-1050-DAE, 2019 WL 5847879, at *3 (W.D. Tex. July 9, 2019). Second, the Court considers the convenience of the parties and witnesses and the interests of justice. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). This consideration "turns on a number of private and public interest factors, none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). These factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *1 (W.D. Tex. June 7, 2019) (internal quotation marks and citation omitted). Not all factors matter in all cases. *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316–18 (5th Cir. 2008) (considering only four factors). When these factors show that the destination forum is "clearly more convenient," the action must be transferred. *See, e.g.*, *Bascom v. Maxim Integrated Prod., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008) ("[The analysis] does not require the level of convenience in the desired venue to be substantially greater than in the original venue, just clearly more convenient.").

## IV.   ARGUMENT

### A.  WSOU Could Have Filed This Case in the Austin Division

WSOU's Complaint alleges that Defendants' principal place of business is at One Dell Way, Round Rock, Texas 78682, *see* Am. Compl. ¶¶ 3–5, and thus WSOU could have filed this case in the Austin Division, s*ee XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *10 (W.D. Tex. Apr. 5, 2017).

### B.  The Austin Division Is Clearly More Convenient than the Waco Division

The Fifth Circuit's test for intra-district transfers shows that this case should be litigated in the Austin Division.  As explained below, four factors clearly favor transfer, the remaining four factors are neutral, and not a single factor supports keeping this lawsuit in the Waco Division.

| Factor | Venue Favored |
|---|---|
| Relative ease of access to sources of proof | Austin |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Austin |
| All other practical problems that make trial of a case easy, expeditious, and inexpensive | Austin |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest in having localized interests decided at home | Austin |
| Avoidance of unnecessary problems of conflict of laws or in the application of foreign law | Neutral |

Thus, when considering the totality of the factors, Austin is clearly more convenient than Waco, and this case should be transferred to the Austin Division.  *See Datascape*, 2019 WL 4254069, at *1–3.

### 1. Factors Clearly Favoring Transfer

#### a. Relative Ease of Access to Sources of Proof

The first factor—access to *relevant* evidence—clearly favors transfer to the Austin Division. In analyzing this factor, the Court "consider[s] the location of the relevant documents and witnesses." *Moskowitz Family LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *3 (W.D. Tex. July 2, 2020). Moreover, in a patent case, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (Quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).)

Defendants have not identified any relevant documents in Waco. Dell's relevant evidence and witnesses are in the Austin Division, with additional employees outside the Western District of Texas. *See* Crantz Decl. ¶¶ 6, 7. Indeed, this Court previously found Dell's "access to sources of proof is relatively easier in Austin than it is in Waco." *Datascape*, 2019 WL 4254069, at *2.

Defendants are also not aware of any relevant third-party documents in Waco.[5] Nor has Plaintiff ever suggested—in its deficient Complaint, Amended Complaint, and preliminary infringement contentions—that any third-party information is relevant to this litigation.

Although WSOU's alias has a nominal physical presence in Waco, Texas, WSOU did not develop, create, or employ the named inventors of the Asserted Patent. The Asserted Patent was not even prosecuted from Texas. *See* Ex. 9 (Transmittal of New Application from Vancouver, Canada). The only *possible* relevant documents in WSOU's possession are ownership and valuation documents related to the acquisition and subsequent monetization attempts of the

---

[5] Defendants' ability to identify relevant third-party companies, documents, and witnesses is hampered by Plaintiff's deficient Complaint, Amended Complaint, and Preliminary Infringement Contentions. Defendants are separately seeking clarity from Plaintiff.

Asserted Patent.  But these documents were created before WSOU had any presence in Waco, by individuals (Mr. Etchegoyen and Mr. Shanus) who do not appear to live in Texas, and potentially by a company that is located in California (Aqua Licensing).  WSOU's presence in Waco cannot obscure the fact that its relevant documents are minimal, are negated by the presence of Aqua Licensing in California, and are significantly outweighed by the fact that the bulk of relevant evidence will come from the Defendants.   Thus, when considering the "totality of the circumstances," the first factor "weighs heavily towards transfer." *Moskowitz*, 2020 WL 4577710, at *4.

### b.  Cost of Attendance for Willing Witnesses

The third factor—the cost for party and non-party witnesses to attend proceedings—also favors transfer.  This factor "is the single most important factor in the transfer analysis" and "consider[s] all potential material and relevant witnesses." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 20, 2020).

Among the potential witnesses at trial, the convenience of non-party witnesses is given the greatest weight. *Id.* at *6.  In this lawsuit, non-party witnesses include: (1) named inventors; (2) prior owners of the Asserted Patent; (3) former sellers of the Asserted Patent; and (4) other third parties.  In this case, not a single non-party is located in the Waco Division.

First, the named inventors, Blair T. MacKiewich, Thomas Tadsen, Yuming Wen, and Radu C. Ungureanu, do not appear to be located in the Western District of Texas.  Based on the face of the patent, the inventors are located in the Vancouver area.  *See* '536 Patent.  There are only two flights departing Vancouver to Waco each day, while there are multiple flight options from Vancouver to Austin..  *See* Ex. 10 (Google Flights from Vancouver).  Similarly, the '536 patent's prior owner, Alcatel Canada Inc., does not appear to be located in Texas.  *See* Ex. 11 (Assignment Record indicating Alcatel Canada Inc. is located in Ottawa, Ontario).

Next, Aqua Licensing is located in San Francisco, and there are direct flights to Austin, but no direct flights to Waco.  *See* Ex. 12 (Google Flights from San Francisco).

Although the case is in its early stages, and Dell has only just received WSOU's preliminary infringement contentions, Dell is not currently aware of any companies in the Waco Division that have relevant information about prior art systems involving the Accused Products. In fact, at the time of the Asserted Patent's claimed priority date, several companies, such as AMD were involved in alleged technology covered by the '536 patent.  *See* Am. Compl. ¶ 17 (accusing QoS); Ex. 13 (U.S. Patent No. 6,459,698 to AMD).  AMD, for example, has a presence in the Austin Division.  *See* Ex. 14 (AMD Locations).

Next, Dell's witnesses are not located in the Waco Division.  The relevant employees are located in Round Rock and Austin, Texas, and outside the Western District of Texas.  *See* Crantz Decl. ¶¶ 6, 7.  It is relatively more burdensome for an Austin-based witness to travel to Waco for trial.  Indeed, if this case is transferred to the Austin Division, potential on-call trial witnesses can still work at Dell's Austin offices.

Meanwhile, WSOU's witnesses appear to reside in Los Angeles and Hawaii.  There is a direct flight from Los Angeles to Austin, but there are no direct flights to Waco.  Ex. 15 (Google Flights from Los Angeles).  And for WSOU's potential witness in Hawaii, there are flights with only one stop to Austin, while flights to Waco require two stops.  *See* Ex. 16 (Google Flights from Hawaii).  As for WSOU's apparently sole employee in Texas, Mr. Hogan, it does not appear that he has *relevant* information regarding the acquisition or valuation of the Asserted Patent, which occurred before he was hired by WSOU.

Accordingly, given the significant number of third-party witnesses outside of the Waco Division, and the Dell employees residing in Austin, this factor strongly weighs in favor of transfer to the Austin Division.  *See Moskowitz*, 2020 WL 4577710, at *5.

### c.  All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

The fourth factor—practical difficulties of a lawsuit—also favors transfer to the Austin Division.  This factor favors transfer when a case is in its early stages and the transfer will have a minimal impact on the trial schedule.  *See Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 WL 12479284, at *2 (W.D. Tex. Aug. 12, 2014).  Here, the Court just held the initial case management conference on October 21, 2020.  Moreover, if this case is transferred to the Austin Division, the Court can maintain the same case schedule.  *See, e.g.*, *Datascape*, 2019 WL 4254069, at *3.  Thus, because "there is little if any risk of judicial waste or inefficiency associated with transfer," the fourth factor favors transfer.  *Id.*

### d.  Local Interest in Having Localized Interests Decided at Home

The sixth factor—local interest in deciding a case—also favors transfer to Austin.  Dell has been located in the Austin Division for decades and employs more than 14,000 people in and around Austin.  Austin therefore has more interest and connection to the outcome of this litigation than Waco.  *See id.* (finding in another case involving Dell that the "outcome of the instant action likely affects local Austin interests more acutely than local Waco interests"); *see also In re Volkswagen AG*, 371 F.3d at 205-06.  While WSOU has a nominal presence in Waco, its activities related to patent acquisitions and licensing occurred while it was headquartered in California and before it relocated its headquarters prior to filing lawsuits in Waco.  Thus, this factor "strongly weighs in favor of transfer."  *Datascape*, 2019 WL 4254069, at *3.

### 2.   Neutral Factors

The remaining factors are neutral.  *See, e.g.*, *Datascape*, 2019 WL 4254069, at *1.  The second factor (availability of compulsory process to secure the attendance of witnesses) is neutral because both the Austin and Waco Divisions have the same ability to secure the attendance of third-party witnesses.  The fifth factor (administrative difficulties flowing from court congestion) is neutral because Defendants have no objection to the Court's retaining control of this case following transfer to the Austin Division.  The seventh factor (familiarity of the forum with the law that will govern) is neutral because Your Honor can sit in either division and patent law does not vary based on the particular forum.  Finally, the eighth factor (conflict of laws or the application of foreign law) is neutral because a transfer to Austin will not involve a conflict of laws or foreign law issues.

## V.     CONCLUSION

Because four factors favor transfer, and the remaining four factors are neutral, this case should be transferred to the Austin Division, which is a clearly more convenient forum. Accordingly, Defendants respectfully ask that the Court grant this Motion.

Dated:  November 4, 2020

By:  */s/ Barry K. Shelton*

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone:  512.263.2165
Facsimile:  512.263.2166

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
Kyanna Sabanoglu
ksabanoglu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), counsel for the parties have conferred and plaintiff is opposed to this motion.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 4th day of November 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*

Barry K. Shelton