

# EXHIBIT 14

**Joint Chart - *WSOU Investments LLC v. Dell Technologies Inc. et al***

The parties have a dispute concerning the number of claim terms and page limits for claim construction briefing and outline their positions below.

| Issue | Relief Sought |
|---|---|
| **Defendants State**:<br><br>At the time of the initial scheduling conference, the parties agreed the 12 cases should split into four groups as follows:<br>**Group 1**:<br><br>| Patent | Claims Asserted | Case # |<br>| ’133 patent | 1-22 | 6:20-cv-00480 |<br>| ’309 patent | 1-16 | 6:20-cv-00485 |<br>| ’800 patent | 1-24 | 6:20-cv-00481 |<br>| ’360 patent | 1-49 | 6:20-cv-00486 |<br><br>**Group 2**:<br><br>| Patent | Claims Asserted | Case # |<br>| ’144 patent | 1, 4, 11, 12, 14 | 6:20-cv-00473 |<br>| ’921 patent | 1, 9, 17 | 6:20-cv-00478 |<br><br>**Group 3**:<br><br>| Patent | Claims Asserted | Case # |<br>| ’489 patent | 1-20 | 6:20-cv-00477 |<br>| ’020 patent | 1, 6 | 6:20-cv-00482 |<br><br>**Group 4**:<br><br>| Patent | Claims Asserted | Case # | | **Defendants request that the Court**:<br><br>(1) Group the ’435 patent with Group 3 for the purposes of claim construction briefing;<br>(2) Groups 2, 3, and 4 will be governed by the term limit presumption and page limits in OGP v. 3.2;<br>(3) For the purposes of the disputed term limit for Group 1, the 13 terms in the ’360 patent that include “means for” count as a single term;<br>(4) Increase the total term limit to 15 for Group 1;<br>(5) 5 additional pages per party for Opening and Response *Markman* briefs and 3 additional pages for Reply and Sur-Reply *Markman* briefs for the Group 1 briefing. |

| Issue | | | Relief Sought |
|---|---|---|---|
| '536 patent | 1, 12 | 6:20-cv-00474 | |
| '129 patent | 3 | 6:20-cv-00479 | |
| '888 patent | 1, 2, 11-13, 15, 19-20 | 6:20-cv-00475 | |
| '435 patent | 1-18 | 6:20-cv-00476 | |

The parties met and conferred twice after exchanging proposed constructions on January 20, 2021 consistent with the Court's scheduling order. D.I. 54. Based on the number of disputed terms for each patent, Defendants request that the '435 patent be considered with Group 3 for the purposes of Markman briefing and hearing. Plaintiff says it does not object to this re-grouping, but argues (with no support) that the term and page limits from the OGP should **not** apply to the adjusted Group 3. With this adjustment, the presumed term limit and page limits for the *Markman* Briefs from the OGP v. 3.2 would apply to Groups 1, 2, 3, and 4 as modified:

| Group | Patents | Term Limit | Opening and Response Brief | Reply and Sur-Reply |
|---|---|---|---|---|
| 1 | 4 ('133, '309, '800, '360 patents) | 10 | 20 pages | 10 pages |
| 2 | 2 ('144, '921 patents) | 8 | 20 pages | 10 pages |
| 3 | 3 ('489, '020, '435 patents) | 10 | 30 pages | 15 pages |
| 4 | 3 ('536, '129, '888 patents) | 10 | 30 pages | 15 pages |

This is already a drastic narrowing than if these 12 cases (each of is a separate case in which only a single patent is asserted) were each subject to its own OGP limit. Nonetheless, Defendants will identify shortly to Plaintiff the narrowed list of term disputes it will pursue for Groups 2, 3, and 4 to fit within these limits. Plaintiff's inexplicable statement that Defendants seek to ask the Court to construe 72 terms is flatly wrong. There should be no dispute about the term and page limits for Groups 2-4, but Plaintiff appears to seek to **narrow** the limits that would apply to Group 3.

| Issue | Relief Sought |
|---|---|
| With respect to Group 1, Defendants respectfully request modest relief from the Court's "presumed limit" for the maximum number of terms for claim construction for Group 1 given Plaintiff asserts *all 111 claims* of these four unrelated patents, and there are **16** "means for" claims presumed to be governed by section 112, ¶ 6 for which WSOU has failed to adequately identify any corresponding structure. <br><br> Unlike the more selective identification of asserted claims in the other three groups (Groups 2 through 4), WSOU asserts every single one of the **111** claims across the four **unrelated** patents in Group 1.  As a result of WSOU's scattershot approach, there is more claim language that requires clarification for the jury. <br><br> Importantly, among these 111 claims are 16 different terms with "means for" language that are presumed to be governed by section 112, ¶ 6.  Although Defendants have met and conferred in good faith and attempted to narrow the number of disputes, WSOU's positions on these terms have effectively foreclosed even a *possibility* of an agreed construction.  The number of terms at issue in Group 1 is a direct result of WSOU's refusal to narrow the asserted claims to a reasonable number, combined with its refusal to actually identify corresponding structure for these means-plus-function claims. <br><br> For the 13 "means for" terms of the '360 patent, WSOU has inexplicably taken the position that, **for all 13 of these terms**, the presumption that section 112, ¶ 6 applies is overcome, and the terms should be given their plain meaning.  WSOU has refused even to identify any alternative function or corresponding structure if the presumption is not rebutted. <br><br> For the 3 means-plus-function terms of the '133 patent, WSOU has not identified **any** corresponding structure.  Instead, WSOU provides broad cites to the specification (citing every single patent figure—most of which depict many structures across the network—and hundreds of lines from the specification), and has advised that it will identify in its opening brief what it actually believes to be the corresponding structure.  For example, WSOU identified for one term: "claim 5 and corresponding | |

| Issue | Relief Sought |
|---|---|
| written description; Figs. 1–7; 3:7–21; 5:24–38; 6:13–65; 7:26–30; 8:15–25; 8:64–9:22; 9:51–10:29; 10:43–11:8; 13:48–14:12; 14:24–65; 15:45–16:20." Nowhere is there actually an identification of structure, as is required by 112, ¶ 6, and as WSOU did for "means for" claims in the other three groups.  WSOU's approach deprives Defendants of the ability to seek a compromise and narrow the disputes.<br><br>During the parties' meet-and-confer call on January 28, 2021, Defendants made clear that, although their position on many of the terms is that there is no corresponding structure, it would be willing to consider reasonable articulations of the corresponding structures as a potential compromise.  WSOU has refused to propose any reasonable structures to which it would agree for any of the 16 terms.  Although WSOU is free to take this approach, WSOU's refusal to identify any corresponding structure for the 16 "means for" terms has effectively hijacked the claim construction process for Group 1, as the Court will need to address all 16 of these terms, which is well beyond the presumptive limit of 10 for the entire group. Not to mention the other disputed terms that should be construed beyond those "means for" terms.<br><br>As a result, Defendants have no choice but to request relief from the Court in advance of the briefing process.  Given the overlapping nature of the section 112, ¶ 6 issues, Defendants believe that the 13 presumptively means-plus-function claims of the '360 patent can reasonably be briefed as a single group because there will be substantial overlap in the argument—which essentially involves whether section 112, ¶ 6 applies to them.  WSOU has argued that all 13 terms overcome the means-plus-function presumption and proposed no alternative construction.  Thus, the only issue the Court needs to address for those terms is whether WSOU can overcome the heavy presumption that these "means for" terms are governed by section 112, ¶ 6. If the court determines these "means for" terms are subject to section 112, ¶ 6, only Defendants have provided the corresponding structure or noted the lack thereof.<br><br>Defendants therefore request that, for the purposes of the term limit, the Court count the presumptively means-plus-function claims of the '360 patent as a single term. | |

| Issue | Relief Sought |
|---|---|
| In addition, Defendants request a modest increase to the term limit (5 additional terms) and a small number of additional pages (5 for opening/response, 3 for reply/surreply) for the *Markman* briefs.  These additions are required so that the parties can address the very narrowly-selected important terms for construction across all 111 claims of these unrelated four patents. | |
| **Plaintiff WSOU States**:  Plaintiff WSOU requests that the Dell Defendants be ordered to comply with the party's stipulation (and OGP 3.2) concerning *Markman* briefing and patent groupings. There is no good reason to modify the agreed limit of 36 terms, and ignore OGP 3.2, to double that amount to 72 terms. Attached as an excel spreadsheet is WSOU's tracking of terms, marking when either side dropped a term. The current count stands at 72.<br><br>Plaintiff WSOU disclosed its infringement contentions on October 14, 2020. 111Three weeks later, on November 4, 2020, the parties submitted a stipulation agreeing to the "presumed *Markman* claim term limits and other Markman restrictions." OGP 3.2 prescribes that amount at 36 terms.  The agreement also noted that a party "may seek leave to modify these limits."<br><br>In the meet and confers, the Dell Defendants requested 72 terms (or 36 terms over the agreed amount).  Of those terms, both parties have requested 11 terms. The Dell Defendants have requested an additional 61 terms and, also, alleged that 31 terms are indefinite.  These amounts are shown in the chart below – broken down by same groups the parties previously agreed to. This is the same chart shared during the parties' ongoing exchange.  The counting is reflected in the attached spreadsheet, namely the summary tab. | **Plaintiff Requests that the Court:**<br><br>Order Defendant to comply with the party's stipulation concerning Markman briefing and patent groupings. |

|  | Dell | WSOU | Both | Total | Indefinite | OGP 3.2 |
|---|---|---|---|---|---|---|
| Group 1 (4 patents) | 28 | 0 | 3 | 31 | 11 | 10 |
| Group 2 (2 patents) | 5 | 0 | 4 | 9 | 3 | 8 |
| Group 3 (2 patents) | 7 | 0 | 0 | 7 | 6 | 8 |

| Issue | | | | | | | Relief Sought |
|---|---|---|---|---|---|---|---|
| Group 4 (4 patents) | 21 | 0 | 4 | 25 | 11 | 10 | |
| Total | 61 | 0 | 11 | 72 | 34 | 36 | |

Plaintiff WSOU has informed the Dell Defendants that it is flexible and would not oppose shifting of terms/pages limit from one group to another – provided the total number of agreed terms/pages were not exceeded (e.g., 36 terms across the cases). As an example, two terms can be shifted from one group to another without otherwise disturbing the groups. The Court approved of this approach in the 15 patent cases between WSOU and Google referenced below. The Dell Defendants have incorrectly taken this to mean that entire parents should artificially shifted from one group to another – disregarding the agreed grouping – in order to artificially increase numbers.

The Dell Defendants argue that Plaintiff WSOU is driving up the terms. Not so. Plaintiff WSOU has only requested construction for 11 of the terms (as identified above). In contrast, the Dell Defendants requested 61 additional terms, which is 25 terms above the agreed amount. If the Dell Defendants simply dropped other terms, there would be no need for the current Court intervention.

The Dell Defendants also argue for the 11 terms both parties agreed needed to be construed that WSOU's disagreement with Dell's construction is nefarious. However, Plaintiff WSOU already explained why it could not agree with these constructions – leaving the issue ripe for Court to determine. WSOU disputes Dell's characterization of WSOU'S position.

For the Group 1 terms, the Dell Defendants argue that Plaintiff WSOU has chosen to exclude certain terms the Dell Defendants says are subject to a "means-plus-function" analysis. However, Plaintiff WSOU has already explained why such terms are NOT subject to such an analysis. And, even if Plaintiff WSOU agreed with the Dell Defendants that such terms are subject to such an analysis, many of those same terms would still be disputed because the Dell Defendants have provided no structure (contrary to their allegation) and instead alleged they are indefinite. Plaintiff WSOU

| Issue | Relief Sought |
|---|---|
| also disagrees with the Dell Defendants' suggestion (first introduced today) to only allowing the parties to brief whether such claims are subject to a means-plus-function analysis and not also brief indefiniteness/structural support. The parties should instead include all issues in the brief in wants the Court to decide.<br><br>The Dell Defendants further argument that there are a lot of claims and means-plus-function terms. This argument should also be rejected. The number of asserted claims does not directly correlate to number of terms or pages required for briefing. And, Dell had all the claims being asserted for three weeks when it agreed to the presumed *Markman* parameters on November 4.  There are no changed circumstances since then. Further, the Dell Defendant chose to allege indefiniteness arguments (at least 31) – inhibiting any potential agreement being reached on such terms and consuming most of the 36 terms.<br><br>The Dell Defendants for the first time today argued that they mat no longer be pursuing all 72 terms they identified in the parties' meet and confers. However, the Dell Defendants have not informed Plaintiff of which, if any, that they are dropping. The chart referenced above accurately reflects all the terms Dell has said are in dispute.<br><br>This issue of forcing a Defendant to comply with the presumed OGP limits is not unique.  The identical issue was addressed in the *WSOU v. Huawei* cases where the Court ordered Huawei to reduces its claim count to 36 in accordance with the OGP 3.2 and the party's stipulation.  *See* e.g., Case No. 6:20-cv-533, Dkt. 42.  Likewise, in the *WSOU v. Google* cases, the Defendant was able to narrow it selection of terms to come within the presumptive limit, namely 47 terms for a set of cases involving 15 patents.  There is no good reason why Dell cannot also comply with the presumptive limit of 36 terms in a set of cases involving 12 patents. | |

| 474 (7,212,536) | | | | | | |
|---|---|---|---|---|---|---|
| Phrase | Dell | WSOU | Both | Count | Dell | WSOU |
| "bridge" / "bridge port" | | 1 | | 1 | "a network interface device that operates no higher than the data link layer" | Plain and ordinary meaning |
| "channel in a connection-based network" | | 1 | | 1 | "one of the paths that has been established in a network for communications" | Plain and ordinary meaning |
| "means for reading priorities of data frames directed by the bridge to at least a first one of the bridge ports" | 1 | | 1 | | This term is subject to 35 U.S.C. § 112, ¶ 6.<br>**Function**: reading priorities of data frames directed by the bridge to at least a first one of the bridge ports<br>**Structure**: Indefinite | Subject to means-plus-function construction.<br>**Function**: reading priorities of data frames directed by the dribe to at least a first one of the bridge ports<br>Structure: bridge, and equivalents thereof |
| "means for determining a number of the service interfaces associated with active channels in the connection-based network" | 1 | | 1 | | This term is subject to 35 U.S.C. § 112, ¶ 6.<br>Function: determining a number of the service interfaces associated with active channels in the connection-based network<br>Structure: Indefinite | Subject to means-plus-function construction.<br>**Function**: determining a number of the service interfaces associated with active channels in the connection-based network<br>**Structure**: bridge, and equivalents thereof; 2:26-34, 4:46-5:18, 5:19-27, 6:44-48, 7:45-56, 7:57-8:20 |
| "means for establishing a mapping between user priorities read by the means for reading priorities of data frames and the service interfaces associated with active channels in the connection-based network based at least in part on a number of the service interfaces associated with active channels in the connection-based network" | 1 | | 1 | | This term is subject to 35 U.S.C. § 112, ¶ 6.<br>**Function**: establishing a mapping between user priorities read by the means for reading priorities of data frames and the service interfaces associated with active channels in the connection-based network based at least in part on a number of the service interfaces associated with active channels in the connection-based network<br>**Structure**: Indefinite | Subject to means-plus-function construction.<br>**Function**: establishing a mapping between user priorities read by the means for reading priorities of data frames and the service interfaces associated with active channels in the connection-based network based at least in part on a number of the service interfaces associated with active channels in the connection-based network<br>**Structure**: bridge, and equivalents thereof; 5:28-6:14, 6:15-47, 6:49-7:34, 9:8-17, 8:37-45, Figs. 4, 5A-I, 6. |
| "means for assigning frames to the service interfaces based upon the user priorities and the mapping" | 1 | | 1 | | This term is subject to 35 U.S.C. § 112, ¶ 6.<br>**Function**: assigning frames to the service interfaces based upon the user priorities and the mapping<br>**Structure**: Indefinite | Subject to means-plus-function construction.<br>**Function**: assigning frames to the service interfaces based upon the user priorities and the mapping<br>**Structure**: bridge, and equivalents thereof; 6:15-25, 7:22-34, 7:57-8:21 |
| "forwarding system configured to read a priority of a data frame to be forwarded onto the connection-based network by way of the first one of the ports, identify a service interface which the map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface" | 1 | | | 1 | This term is subject to 35 U.S.C. § 112, ¶ 6.<br>**Function**: read a priority of a data frame to be forwarded onto the connection-based network by way of the first one of the ports, identify a service interface which the map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface<br>**Structure**: Indefinite | Plain and ordinary meaning |
| | | | | Count | 3 | 0 | 4 |
| | | | | Sub-tc | 7 | |

## 475 (7453888)

| | Phrase | Dell | WSOU | Both | | |
|---|---|---|---|---|---|---|
| | "stackable trunk port" | 1 | | 1 | "trunk port supporting the Riverstone solution (i.e. the additional extension 802.1Q packet header)" | Plain and ordinary meaning |
| | "backbone VLAN Identifier (ID)" | 1 | | 1 | "extended VLAN ID that is managed by a service provider and is independent of a standard VLAN ID" | Plain and ordinary meaning |
| | "backbone VLAN trunk" | 1 | | 1 | "data transport trunk links defined between stackable trunk ports on core routers" | Plain and ordinary meaning |
| | "wherein the selection and association of at least one backbone VLAN ID with each one of the corresponding plurality of backbone VLAN trunks is undertaken irrespective of one of an in-use and a stand-by designation of each one of the plurality of backbone VLAN trunks and each one of the plurality of stackable trunk ports" (claim 1) / "wherein the association of the plurality of backbone VLAN IDs with the backbone VLAN trunk is undertaken irrespective of one of an in-use and a stand-by designation of the backbone VLAN trunk and the at least one stackable trunk port" (claim 15) | 1 | | 1 | "wherein the provisioning method ignores the designation of a backbone VLAN trunk as in use or stand-by when associating the backbone VLAN ID with the backbone VLAN trunks (as opposed to, during association of VLANs with trunks, explicitly designating physical VLANs associated with a logical VLAN as in-use and explicitly designating other physical VLANs associated with the logical VLAN as back-up)" | Plain and ordinary meaning |
| 1 | "associating each of the backbone VLAN ID with each one of the plurality of backbone VLAN trunks" | 1 | | 1 | Indefinite / In the alternative: "associating each of the backbone VLAN ID with all of the backbone VLAN trunks" | Plain and ordinary meaning |
| | ~~"tracking previously obtained backbone VLAN IDs"~~ | | x | | | |
| | | Count 5 | 0 | 0 | | |
| | | | Sub-total 5 | | | |

## 476 (7565435)

| | Phrase | Dell | WSOU | Both | | |
|---|---|---|---|---|---|---|
| | ~~"an appropriate one of the MSTIs"~~ | x | | | | Plain and ordinary meaning |
| | ~~"VLAN member sets"~~ | x | | | | Plain and ordinary meaning |
| | "setting the IPPC of one of the ports of one of said bridges within the MSTI to a lower IPPC when said port is part of the VLAN member set" | 1 | | | order of steps The setting of the IPPC to a lower IPPC must occur after the creation and configuration of the Multiple Spanning Tree Instances step and after the creation of the VLAN member sets step | Plain and ordinary meaning |
| 1 | "the Internal Port Path Cost (IPPC)" | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| 1 | "Multiple Spanning Tree Protocol (MSTP) engine" | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| 1 | "processing unit for setting the Internal Port Path Cost (IPPC) of one of said bridges within the MSTI to a high IPPC when said port is not part of the VLAN member set" | 1 | | 1 | This term is subject to 35 U.S.C. § 112, ¶ 6. **Function**: setting the Internal Port Path Cost (IPPC) of one of the ports of one of said bridges within the MSTI to a high IPPC when said port is not part of the VLAN member set **Structure**: Indefinite | Plain and ordinary meaning |
| 1 | "processing unit for setting the IPPC of one of the ports of one of said bridges within the MSTI to a lower IPPC when said port is part of the VLAN member set" | 1 | | 1 | This term is subject to 35 U.S.C. § 112, ¶ 6. **Function**: setting the IPPC of one of the ports of one of said bridges within the MSTI to a lower IPPC when said port is part of the VLAN member set **Structure**: Indefinite | Plain and ordinary meaning |
| 1 | "among the last ones" / "among the first ones" | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| 1 | "ideally" | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| 1 | "IEEE standard recommended value" | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| 1 | "suppressing" | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| 1 | Entirety of claims | 1 | | 1 | Indefinite | Plain and ordinary meaning |
| | | Count 10 | 0 | 0 | | |
| | | | Sub-total 10 | | | |

**479 (8402129)**

| Phrase | Dell | WSOU | Both | | | |
|---|---|---|---|---|---|---|
| "rate of change" | 1 | | 1 | Plain and ordinary meaning; not an instantaneous value measured at a fixed point in time | Plain and ordinary meaning |
| "initiating a poll of resources in the nodes of the network by the management station in response to reporting from the node or a time interval being exceeded" | 1 | | 1 | Both of these events trigger a poll | Plain and ordinary meaning |
| "time interval" | 1 | | 1 | "elapsed time since the last poll was performed" | Plain and ordinary meaning |

| | | Count | 3 | 0 | 0 | |
|---|---|---|---|---|---|---|
| 15 | | | **Sub-total** | | **3** | |

| | Dell | WSOU | Both | |
|---|---|---|---|---|
| Total | 21 | 0 | 4 | **25** |