**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:20-cv-00474-ADA<br>Case No. 6:20-cv-00475-ADA<br>Case No. 6:20-cv-00476-ADA<br>Case No. 6:20-cv-00479-ADA |
| Plaintiff, | |
| v. | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF REGARDING**
**PATENT NOS. 7,212,536, 7,453,888, 7,565,435 & 8,402,129**

**TABLE OF CONTENTS**

Page

I.      DISPUTED TERMS FROM THE '536 PATENT.............................................................. 1

    A.      "bridge" (claims 1, 12)...................................................................................1

    B.      "channel in a connection based network" (claims 1, 12)........................................2

    C.      "forwarding system configured to read a priority of a data frame to be
            forwarded onto the connection-based network by way of the first one of
            the ports, identify a service interface which the map indicates corresponds
            to the read user priority and forward the data frame over the channel in the
            connection-based network associated with the identified service interface"
            (claim 1)........................................................................................................3

    D.      "means for reading priorities of data frames directed by the bridge to at
            least a first one of the bridge ports" (claim 12) ........................................4

II.     DISPUTED TERMS FROM THE '888 PATENT.............................................................. 6

    A.      "stackable trunk port"  (claims 1, 8, 9, 10, 11–13, 15, 19, 20) ..............................6

    B.      "backbone VLAN trunk" (claims 1, 5, 6, 7, 12, 15–20)..........................................7

    C.      "wherein the selection and association of at least one backbone VLAN ID
            with each one of the corresponding plurality of backbone VLAN trunks is
            undertaken irrespective of one of an in-use and a stand-by designation of
            each one of the plurality of backbone VLAN trunks and each one of the
            plurality of stackable trunk ports" (claim 1) / "wherein the association of
            the plurality of backbone VLAN IDs with the backbone VLAN trunk is
            undertaken irrespective of one of an in-use and a stand-by designation of
            the backbone VLAN trunk and the at least one stackable trunk port"
            (claim 15)......................................................................................................8

III.    DISPUTED TERMS FROM THE '435 PATENT.............................................................. 12

    A.      "setting the IPPC of one of the ports of one of said bridges within the
            MSTI to a lower IPPC when said port is part of the VLAN member set"
            (claims 1, 8, 13) ...........................................................................................12

    B.      "ideally" (claims 7, 11, and 18) .........................................................................13

    C.      "processing unit for setting the Internal Port Path Cost (IPPC) of one of
            the ports of one of said bridges within the MSTI to a high IPPC when said
            port is not part of the VLAN member set" (claim 8) / "processing unit for
            setting the IPPC of one of the ports of one of said bridges within the MSTI

# TABLE OF CONTENTS
### (*continued*)

Page

to a lower IPPC when said port is part of the VLAN member set" (claim 8) ........................................................................................................14

D.    Entirety of claims 9–11 and 13–18 ........................................................15

IV.    DISPUTED TERMS FROM THE '129 PATENT.......................................... 16

A.    "rate of change" (claim 3)......................................................................16

B.    "initiating a poll of resources in the nodes of the network by the management station in response to reporting from the node or a time interval being exceeded" (claim 3) ......................................................18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cisco Systems, Inc. v. Ruckus Wireless, Inc.*,
    No. 1:13-cv-492, D.I. 69 (W.D. Tex. Mar. 3, 2015) ...................................................... 2

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366, 1375 (Fed. Cir. 2008) .......................................................................... 9

*ContentGuard Holdings, Inc. v. Apple Inc.*,
    701 F. App'x 957 (Fed. Cir. 2017) .............................................................................. 19

*Digital Ally, Inc. v. Taser Int'l, Inc.*,
    810 F. App'x 873 (Fed. Cir. 2020) .............................................................................. 14

*Dyfan LLC v. Target Corp.*,
    19-cv-179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020) ................................ 15

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) .............................................................................. 1, 3

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Corp.*,
    830 F. App'x 305 (Fed. Cir. 2020) .............................................................................. 14

*International Glass Comp. Inc. v. U.S.*,
    408 F.2d 395 (1969) .................................................................................................... 19

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) .................................................................................................. 7, 8

*MTD Prod. Inc. v. Iancu*,
    933 F.3d 1336 (Fed. Cir. 2019) ................................................................................... 15

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) ................................................................................. 4, 5

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ..................................................................................... 6

*Panoptis Patent Mgmt., LLC v. Blackberry Ltd.*,
    Case No. 2:16-cv-62-JRG-RSP, 2017 WL 497571 (E.D. Tex. 2017) ....................... 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 2, 17

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Power Mosfet Techs., L.L.C. v. Siemens AG,*
378 F.3d 1396 (Fed. Cir. 2004)...............................................................................14

*Samsung Elecs. Am. v. Prisua Eng'g Corp.,*
948 F.3d 1342 (Fed. Cir. 2020)...............................................................................15

*Schumer v. Lab. Computer Sys.,*
308 F.3d 1304 (Fed. Cir. 2002)...............................................................................16

*Tech Properties Ltd. LLC v. Huawei Techs. Co.,*
849 F.3d 1349 (Fed. Cir. 2017).................................................................................9

*Twin Peaks Software Inc. v. IBM Corp.,*
690 F. App'x 656 (Fed. Cir. 2017) ...........................................................................5

*Williamson v. Citrix Online, LLC,*
792 F.3d 1339 (Fed. Cir. 2015)...............................................................................15

*WMS Gaming Inc. v. Int'l Game Tech.,*
184 F.3d 1339 (Fed. Cir. 1999)...............................................................................15

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 20 | February 1, 2021 Email from R. Loveless ("2/1/21 Email") |

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Document(s) |
|---|---|
| '129 patent | U.S. Patent No. 8,402,129 |
| '435 patent | U.S. Patent No. 7,565,435 |
| '536 patent | U.S. Patent No. 7,212,536 |
| '888 patent | U.S. Patent No. 7,453,888 |
| DefBr. | Responsive Claim Construction Brief (Case No. 6:20-cv-474-ADA, Dkt. 85; Case No. 6:20-cv-00475-ADA, Dkt. 88; Case No. 6:20-cv-00476-ADA, Dkt. 77; Case No. 6:20-cv-00479-ADA, Dkt. 85) |
| MPEP | Manual of Patent Examining Procedure |
| MSTI | Multiple spanning tree instance |
| MSTP | Multiple spanning tree protocol |
| PlBr. | Opening Claim Construction Brief (Case No. 6:20-cv-474-ADA, Dkt. 82; Case No. 6:20-cv-00475-ADA, Dkt. 85; Case No. 6:20-cv-00476-ADA, Dkt. 74; Case No. 6:20-cv-00479-ADA, Dkt. 81) |
| POSA | Person of skill in the art |
| ReplyBr. | Reply Claim Construction Brief (No. 6:20-cv-474-ADA, Dkt. 87; Case No. 6:20-cv-00475-ADA, Dkt. 90; Case No. 6:20-cv-00476-ADA, Dkt. 79; Case No. 6:20-cv-00479-ADA, Dkt. 87) |
| VLAN | Virtual Local Area Network |
| WSOU | WSOU Investments, LLC D/B/A Brazos Licensing and Development |

*Emphasis added unless indicated otherwise.*

As detailed in Defendants' responsive brief, all of Defendants' constructions are expressly supported by the intrinsic record.  Unable to combat this clear evidence, WSOU's reply simply regurgitates conclusory assertions of "plain and ordinary meaning."  For the vast majority of the terms, WSOU refuses to even say what that plain and ordinary meaning is, instead launching half-hearted attacks on Defendants' constructions, by simply calling them "vague" and "confusing."  And, for the few terms where WSOU actually provides a position as to "plain and ordinary meaning," WSOU agrees with Defendants.  Yet, despite agreeing with Defendants as to what is required, WSOU still argues that this Court should not provide the requisite clarity for a jury.  The Court should adopt Defendants' constructions, which are drawn directly from the intrinsic record and would provide clarity to the jury.

## I.   DISPUTED TERMS FROM THE '536 PATENT

### A.   "bridge" (claims 1, 12)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| "a network interface device that operates no higher than the data link layer" | Plain and ordinary meaning |

WSOU does not dispute that "bridge" was a technical term well known to a POSA in 2001, and that it refers to a particular type of network device that operates at the data link layer (layer 2). *See* DefBr. 2–4; ReplyBr. 1.  While Defendants' construction would instruct a juror to what this technical term actually means—and Defendants' support for its construction is unrebutted—WSOU seeks to keep the jury in the dark and insists that "no construction is necessary."  ReplyBr. 1.  Construction is necessary here so that the jury is informed of the apparently undisputed meaning of the technical term "bridge" to a POSA in 2001.  *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) ("By determining only that the terms should be given their plain and ordinary meaning, the court left this question of claim scope unanswered,

leaving it for the jury to decide. ***This was legal error***.").[1]

WSOU's sole attack is asserting that Defendants' construction is "vague and confusing" because the language is not pulled directly from the specification. *See* ReplyBr. 1. It is unsurprising that the specification did not define for a POSA what was a basic and well-understood technical term in 2001. Defendants' construction accurately describes the undisputed distinction between a "bridge" (which refers to a device that operates at layer 2) and other types of network interface devices (which may operate at other layers) and is entirely consistent with the intrinsic record. *See* DefBr. 2–4; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (holding extrinsic sources "can help the court determine what a person of ordinary skill in the art would understand claim terms to mean"). Defendants' construction therefore should be adopted to inform the jury of the technical meaning of "bridge."

### B. "channel in a connection based network" (claims 1, 12)

| Defendants' Proposal | WSOU's Proposal |
| --- | --- |
| "one of the paths that has been established in a network for communications" | Plain and ordinary meaning |

Unable to substantively respond to Defendants' construction or find a flaw in the clear and unequivocal support for such construction (as set forth in DefBr. 5–7), WSOU resorts to three ancillary arguments, each of which is beside the point and should be rejected. ***First***, WSOU argues that Defendants' construction results in non-infringement. This is not a reason to reject the correct construction. Indeed, parties frequently stipulate to non-infringement after claim construction. *See, e.g.*, *Cisco Systems, Inc. v. Ruckus Wireless, Inc.*, No. 1:13-cv-492, D.I. 69 (W.D. Tex. Mar. 3, 2015); *see also* DefBr. 5 n.3 (explaining court may concentrate on the aspects of the claims

---

[1] WSOU feigns shock at the notion that it would allege infringement of a device that no POSA would consider a bridge in 2001, but that is exactly what WSOU has done in this case. *See* DefBr., Ex. 4 at 5–6 (alleging infringement of devices with IP (network layer) routing).

related to the accused products in dispute).  That the proper scope of the term means Defendants do not infringe is simply the unsurprising result of the technology described in the patent from 2001 being fundamentally different from what is being accused of infringement 20 years later.

*Second*, WSOU argues that Defendants' construction is "confusing" because Defendants proffered a compromise to resolve one of the issues raised in WSOU's opening brief.  *See* DefBr. 7.  Not true.  Defendants' construction and their compromise both make clear that the claims require the "channel" portion of the term be:  (1) established and (2) in the connection-based network.  As already detailed, both of these requirements are mandated by the intrinsic record and WSOU does not substantively dispute these requirements.  DefBr. 5–7.

*Finally*, WSOU states that the specification provides examples of channels in a connection-based network.  While WSOU's point is not clear, each of these examples fully supports (and is captured by) Defendants' construction; a "connection based network" (like the plain old telephone network) requires a connection to be established in the network before communication may take place.  *See* DefBr. 5–7; *See Eon*, 815 F.3d at 1319.

## C. "forwarding system configured to read a priority of a data frame to be forwarded onto the connection-based network by way of the first one of the ports, identify a service interface which the map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface" (claim 1)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| This term is subject to 35 U.S.C. § 112, ¶ 6.<br>***Function***:  read a priority of a data frame to be forwarded onto the connection-based network by way of the first one of the ports, identify a service interface which the map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface<br>***Structure***:  Indefinite | Plain and ordinary meaning |

WSOU does not dispute that the term "forwarding system" is a nonce word that fails to connote a sufficiently definite structure.  *See* DefBr. 7–8; ReplyBr. 2–4.  Instead, WSOU argues

that this term has structure because the claim also *separately* recites a "bridge having a plurality of bridge ports." ReplyBr. 3. This, of course, is completely beside the point. The claim recites an apparatus with three separate components: a bridge, a map, and a forwarding system. The structure for one of these components cannot serve as the structure for another. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008) (rejecting as "redundant and illogical" argument that requisite structure for "generating means" was a "bank computer" when claim itself recited a "bank computer" that included "generating means"). The block quotes WSOU recycles in its reply just reinforce that "system" in this context has no readily understandable structure in the field and that there is no actual structure tied to the recited function for "forwarding system." *See* DefBr. 9. Indeed, the one structure WSOU suggests ("bridge") is decidedly *not* what the claim is referring to by a "forwarding system," since the claim separately recites the "bridge."

Because this claim term fails to connote sufficient structure, it is governed by Section 112, ¶ 6. The required function of "read[ing] a priority of a data frame" lacks corresponding structure for the reasons detailed below for the term "means for reading priorities . . . ."

### D. "means for reading priorities of data frames directed by the bridge to at least a first one of the bridge ports" (claim 12)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| This term is subject to 35 U.S.C. § 112, ¶ 6.<br>***Function***: reading priorities of data frames directed by the bridge to at least a first one of the bridge ports<br>***Structure***: Indefinite | Subject to means-plus-function construction.<br>***Function***: reading priorities of data frames directed by the bridge to at least a first one of the bridge ports<br>***Structure***: bridge, with bridging system and bridge port, and equivalents thereof[2]<br>***Algorithm, (if required): see e.g.,*** 4:26-37, 5:40-55, 6:4-14, 6:15-42, 7:23-44, 8:21-28, Figs. 1, 2, 4, 5A -I, 6, and equivalents thereof. |

---

[2] WSOU changed its proposal in its brief from what it conveyed before briefing. Previously, WSOU merely identified "bridge, and equivalents thereof." DefBr., Ex. 6 (Preliminary Constructions) at 9. WSOU's flip-flopping on this point illustrates that there is no corresponding structure in the patent that actually performs this function.

This term completely lacks a corresponding structure including the requisite algorithm. The specification has **no** disclosure of the claimed function of "reading priorities of data frames." WSOU **concedes** that the function is not contained in the specification, stating that the function instead "is fully explained by the claim language." ReplyBr. 5. But the law requires that the **specification** link the claimed function to particular structure, and here the specification does not even describe the claimed function, let alone link it to structure.

Faced with this indisputable fact, WSOU resorts to reusing the same block quotes from its opening brief as if the lack of relevant disclosure can be overcome by a lot of irrelevant disclosure. The closest disclosure in these four paragraphs simply states that "the priority of the frame is determined," with no explanation of **how** it is determined, let alone that it is determined by reading something in the data frame. Even if this disclosure was related to the claimed "reading . . ." function, it does not "clearly link[]" the determination of priority to any specific structure and thus does not qualify as corresponding structure. *Twin Peaks Software Inc. v. IBM Corp.*, 690 F. App'x 656, 660 (Fed. Cir. 2017). WSOU insists that the claimed function is performed by the bridge, but that would be "redundant and illogical" in light of the fact that the claimed "means for reading" is claimed as a specific **part** of the bridge. *See* '536 patent, cl. 12; *Net MoneyIN*, 545 F.3d at 1366. Because WSOU has no answer to this Federal Circuit case, it tries to pivot, arguing now that the bridge has multiple components like a bridging system and a bridge port. ReplyBr. 6. This argument only highlights that there is nothing in the specification to clearly link the claimed function to **any** of those components. *Twin Peaks*, 690 F. App'x at 660.

Finally, even if WSOU were correct that the specification linked the claimed function to the bridge—which it is not—Plaintiff's asserted structure is still insufficient as the specification still lacks any corresponding algorithm. DefBr. 11–12. WSOU does not meaningfully dispute

that an algorithm is required.  ReplyBr. 6.  Instead, WSOU pretends that the bare statement that "the priority of the frame is determined" is somehow sufficient disclosure of the alleged algorithm. It is not.  *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) ("This type of purely functional language, which simply restates the function associated with the means-plus-function limitation, is insufficient to provide the required corresponding structure.").  WSOU also cites alternative embodiments, such as disabling user priorities, but those alternatives have nothing to do with the claimed "reading" function.  Since there is no description of reading priority from a frame in the specification—let alone an *algorithm* to perform that function—this term is indefinite.

## II.  DISPUTED TERMS FROM THE '888 PATENT

### A.  "stackable trunk port"  (claims 1, 8, 9, 10, 11–13, 15, 19, 20)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| "trunk port supporting the Riverstone solution (i.e. the additional extension 802.1Q packet header)" | Plain and ordinary meaning |

As addressed in Defendants' responsive brief (at 14–15), "stackable trunk port" was expressly defined in the intrinsic record.  The specification states that "trunk ports supporting the Riverstone solution *are known as* stackable trunk ports" ('888 patent, 8:24–25) and applicants reaffirmed during prosecution that this exact disclosure "clearly illustrate[s] *what is meant* by . . . *stackable trunk ports*" (DefBr., Ex. 8, (6/9/08 Appl. Arg.) at 12).  *See also id.* ("In view of this *meaning of . . . stackable trunk port*, the Examiner is kindly requested to fully reconsider the arguments . . .").  WSOU does not even attempt to address the substance of these definitional statements, dismissing them as "an example."  *See* ReplyBr. 7.  WSOU then repeats its unsupported argument that the patent's disclosures are merely exemplary.  *Compare id.*, *with* PlBr. 10.  This argument is plainly rebutted by the intrinsic record.  *See* DefBr. 14–15.  Moreover, as previously addressed, WSOU *agrees* that stackable trunk ports must at least "support the use of

an additional VLAN header,"[3] and WSOU's citation to Figure 2 confirms that the Riverstone solution is an additional extended 802.1Q VLAN header.  *See id*. 15.  Thus, the Court should adopt Defendants' construction which is taken directly from the applicants' lexicography and explains this technical term to the jury.  *See id*. 14–15 (citing cases); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

**B.**      **"backbone VLAN trunk" (claims 1, 5, 6, 7, 12, 15–20)**

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| "data transport trunk links defined between stackable trunk ports on core routers" | Plain and ordinary meaning |

Like the prior term, the intrinsic record expressly mandates Defendants' construction.  *See* DefBr. 16–17.  And, again, WSOU's reply simply ignores the evidence Defendants cite, and merely repeats its opening brief.  *Compare* ReplyBr. 7–8, *with* PlBr. 10–11.  As Defendants previously explained, applicants expressly defined "backbone VLAN trunk" during prosecution— "Backbone VLANs travel over ***backbone VLAN trunks, which <u>are</u> defined between stackable trunk ports on core routers***. . . . Claim 1 is directed to a method of provisioning a backbone VLAN. . . . A ***backbone VLAN <u>is</u> a path through the core of a network***."  DefBr. 16 (quoting Ex. 7, (10/19/07 App. Arg.) at 11–13.).  This definition is further supported by the claim language itself and the specification.  *See* DefBr. 16–17.  Even WSOU admits that "the claims themselves show" that "stackable trunk ports . . . ***correspond to*** a backbone VLAN trunk."  ReplyBr. 8.  And, even the embodiment to which WSOU cites (in a failed effort to support its argument that stackable trunk ports are not required) states that the "managed domains" being bridged are "stackable trunk

---

[3] WSOU's agreement confirms the need for a construction here; and completely undercuts WSOU's request to simply say "plain and ordinary meaning."  How else would a lay juror understand that a "stackable truck port" requires "an additional VLAN header" (as stated by WSOU; ReplyBr. 7) or more correctly that a "stackable truck port" is "trunk port supporting the Riverstone solution (i.e. the additional extension 802.1Q packet header)" as defined in the intrinsic record and set forth in Defendants' construction.

ports 302":

> Therefore **backbone VLAN trunks 308 bridging two managed domains** exist. For **such backbone VLAN trunks**, the backbone VLAN provisioning methods apply at least to the proximal **managed corresponding stackable trunk ports 302**.

'888 patent, 11:49–54; DefBr. 17.  In other words, WSOU's cite supports Defendants' construction that a backbone VLAN trunk is defined between stackable trunk ports on core routers.

WSOU also repeats its incorrect argument that the term "core router" is "vague and unreliable" and thus should not be part of the construction.  ReplyBr. 8.  As previous addressed, the disclosure on which WSOU relies does not support its argument.  *See id.* (quoting '888 patent, 8:52–57).  Rather, this disclosure simply states that the concept of a "core router" has expanded beyond a physical device to include "logical entities (such as virtual routers)."[4]  WSOU cannot be allowed to ignore applicants' clear lexicography in favor of plain meaning.  As such, the Court should adopt the express definition provided by applicants, which will also help the jury understand what a backbone VLAN trunk means.  *See* DefBr. 17 (citing cases); *Markman*, 517 U.S. at 372.

C.   **"wherein the selection and association of at least one backbone VLAN ID with each one of the corresponding plurality of backbone VLAN trunks is undertaken irrespective of one of an in-use and a stand-by designation of each one of the plurality of backbone VLAN trunks and each one of the plurality of stackable trunk ports" (claim 1) / "wherein the association of the plurality of backbone VLAN IDs with the backbone VLAN trunk is undertaken irrespective of one of an in-use and a stand-by designation of the backbone VLAN trunk and the at least one stackable trunk port" (claim 15)**

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| "wherein the provisioning method ignores the designation of a backbone VLAN trunk as in-use or stand-by when associating the backbone VLAN ID with the backbone VLAN trunks (as opposed to, during association of VLANs with trunks, explicitly designating physical VLANs associated with a logical VLAN as in-use and explicitly | Plain and ordinary meaning |

---

[4] Again, if this concept is "vague" (as WSOU asserts) then the claims are indefinite since applicants defined backbone VLAN trunk as links between stackable trunk ports on "core routers."  *See* DefBr. 17.

| designating other physical VLANs associated with the logical VLAN as back-up)" | |

As detailed in Defendants' responsive brief, applicants expressly:  (1) argued that "the provisioning methods of the present claims *ignore* [in-use and standby] designations when associating the backbone VLAN IDs with the backbone VLAN trunks" and (2) disclaimed methods that "during association of VLANs with trunks explicitly designates *one of the physical VLANs associated with a logical VLAN as in-use* and explicitly designates one or more other physical VLANs associated with the logical VLAN as back-up."  DefBr. 19 (quoting Ex. 8, (6/9/08 App. Arg.) at 11).  The prosecution history of the '888 patent is clear and unmistakable, and the "irrespective" limitation must be construed in accordance with these express disclaimers.  *See* DefBr. 18–20.[5]

WSOU's attempts to distract from these clear statements are unavailing.[6]  For example, WSOU incorrectly states that applicants' disclaimer was limited to the association of backbone VLAN IDs with "*backbone VLAN trunks*, *not ports* as Defendants are contending."  ReplyBr. 9.  This argument is nonsensical because backbone VLAN trunks are simply the links between stackable trunk ports—thus association of backbone VLAN trunks *necessitates* the association of stackable trunk ports.  *See* '888 patent, cl. 1 ("associating each of the backbone VLAN ID with each one of the plurality of *backbone VLAN trunks by*: . . . *associating* the backbone VLAN ID with each one of the plurality of *stackable trunk ports*"); *id.*, Abstract ("The method includes . . . provisioning backbone VLAN support on every *backbone data transport trunk and by extension*

---

[5] WSOU wrongly asserts that Defendants' construction rewrites the claim language.  ReplyBr. 9. Defendants' construction is copied directly from the applicants' disclaimer and is thus dispositive. *See Tech Properties Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017).

[6] WSOU's citation to *Computer Docking* is inapposite.  ReplyBr. 9 (citing *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008)).  As addressed in Defendants' responsive brief, and here, applicants' disclaimers are clear and unambiguous.  *See* DefBr. 18–20.

*of every stackable data trunk port*[.]"); *id.*, 8:24–27 ("[T]runk ports supporting the Riverstone solution are known as stackable trunk ports and the data transport trunk links **associated therewith** are known as backbone trunks."). Nonetheless, the "irrespective limitation" discussed during prosecution is the **same** as the one in the claims,[7] namely the "**association** of the at least one **backbone VLAN ID with** each one of the corresponding plurality of **backbone VLAN trunks** is undertaken **irrespective of one of an in-use and a stand-by designation** . . . ."[8]  *Id.*, cl. 1; *see also id.*, cl. 15.

WSOU also wrongly asserts that Defendants' construction "omits entire concepts such as 'selection and association' and 'stackable trunk ports.'"  ReplyBr. 9.  To the contrary, neither of Defendants' proposed constructions—for claims 1 and 15 respectively—remove those concepts from the claims.  They are already recited earlier in the claim language.  Defendants' construction of the "wherein" clause is copied *verbatim* from applicants' statements during prosecution explaining what is meant by that very phrase.  In any event, associating a backbone VLAN ID with the backbone VLAN trunks **necessarily** requires the selection and association of backbone VLAN IDs with stackable trunk ports.  *See, e.g.*, '888 patent, 10:19–24 ("The association 414 of the backbone VLAN identifier with all trunk links 308 is typically implemented via backbone VLAN identifier associations with the corresponding stackable trunk ports 302. All of the corresponding stackable trunk ports 302 are determined, step 426, and the backbone VLAN identifier is

---

[7] *Compare* '888 patent, cls. 1, 15, *with* DefBr., Ex. 8, (6/9/08 App. Arg.) at 2, 4.

[8] WSOU partially quotes applicants' statement that that "backbone VLAN trunks may each already have a designation of in-use or standby, but the provisioning methods of the present claims ignore those designations when associating the backbone VLAN IDs with the backbone VLAN trunks." ReplyBr. 9 (quoting DefBr., Ex. 8, (6/9/08 App. Arg.) at 12).  It is unclear how WSOU believes this statement supports its arguments. Defendants' construction is copied from this statement and the statement makes clear that the claims require the association of a backbone VLAN ID with backbone VLAN trunks in a way that ignores spanning tree in-use and stand-by designations.

associated (428) therewith."); *id.*, Abstract, 16:8–11, 17:1–6, cls. 1, 15 & Fig. 4.

WSOU's assertion that "patentee's argument had nothing to do with the number 'one';
[and instead] it had to do with the performance of 'explicitly designates' during association" is
also totally contrary to what applicants said during prosecution. ReplyBr. 10. Applicants
expressly distinguished Gai based on its association of a backbone VLAN ID with a ***single*** in-use
backbone VLAN trunk:

> This is completely contrary to the backup method taught by Gai, which during
> association of VLANs with trunks ***explicitly designates one of the physical VLANs
> associated with a logical VLAN as in-use*** and explicitly designates one or more
> other physical VLANs associated with the logical VLAN as back-up.
>
> * * *
>
> Claim 1 also includes the limitation that the selection and association of the
> backbone VLAN IDs with the backbone VLAN trunks is undertaken irrespective
> of an in-use and a stand-by designation of the backbone VLAN trunks. This is a
> limitation not taught by Gai. The Examiner states that "each physical VLAN is
> designated as ACTIVE, STAND-BY, and UNUSABLE. This implies that the
> trunks in the physical VLANs associated with each logical VLAN are undertaken
> irrespective of a one in-use and/or stand-by designation." ***As argued previously,
> this is actually contrary to the limitation of claim 1. Because each logical VLAN***
> (***which the Examiner has equated with a backbone VLAN*** by equating the ID RED
> with a backbone VLAN ID) of Gai deliberately ***has one active physical VLAN
> associated with it*** and a number of stand-by physical VLANs, the association
> cannot be said to be irrespective of whether the trunk is in-use or stand-by.

DefBr., Ex. 8, (6/9/08 App. Arg.) at 12–13. Thus, applicants explicitly disclaimed methods, like
the one in Gai, that designate for a particular VLAN ID a ***single*** (i.e., one) in-use trunk and
designates other trunks as standby. *See* DefBr. 18–20 & Ex. 12 (Gai) Fig. 5C (annotations added).

WSOU's assertion that applicants' statements were limited to teaching regarding VLANs
and not backbone VLANs (*see* ReplyBr. 9–10) is also belied by applicants' statement limiting the
claims to methods that "ignore those designations when associating the ***backbone VLAN IDs with
the backbone VLAN trunks***" (DefBr., Ex. 8, (6/9/08 App. Arg.) at 11). Indeed, Gai was expressly
dealing with how to associate backbone VLAN IDs with backbone VLAN trunks. DefBr., Ex. 12
(Gai) 6:15–17 & 7:6–47.

11

Thus, the "irrespective" clause should be construed to mean what applicants said it means. Namely, it requires ignoring whether a trunk is in-use or stand-by when associating the VLAN ID, and it cannot include designating a single VLAN trunk as active and others as backup. Moreover, because WSOU acknowledged this as a claim construction dispute; resolution now is appropriate. *See* DefBr. 20.

## III. DISPUTED TERMS FROM THE '435 PATENT

### A. "setting the IPPC of one of the ports of one of said bridges within the MSTI to a lower IPPC when said port is part of the VLAN member set" (claims 1, 8, 13)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| order of steps<br>The setting of the IPPC to a lower IPPC must occur after the creation and configuration of the Multiple Spanning Tree Instances step and after the creation of the VLAN member sets step | Plain and ordinary meaning |

WSOU's reply *concedes* that the claims require an order. ReplyBr. 10–12. WSOU also admits that an order of steps can apply to the system and apparatus claims. *Id.* Thus, at a *minimum* the Court should rule as a matter of claim construction that steps 1[a] and 1[b] must *begin* before step 1[d] begins. The only remaining dispute appears to be whether steps 1[a] and 1[b] must be *completed* before step 1[d] occurs.[9] As previously explained, they must. DefBr. 22–24. Step 1[b] refers to "the *appropriate* one of *the MSTIs*." It expressly references "the MSTIs" referring back to the "*plurality* of Multiple Spanning Tree Instances (MSTIs)" created in step 1[a]. Thus, step 1[b] must occur after step 1[a] is completed; after the "plurality of [MSTIs]" are created in step 1[a], an "appropriate one" can then be determined in step 1[b].

WSOU also unsuccessfully tries to evade the fact that *all* embodiments in the specification

---

[9] The bracketed notations refer to the claim limitations as identified on page 22 of Defendants' Responsive brief.

specifically require step 1[d] to occur *after* steps 1[a] and 1[b] are completed.  DefBr. 23–24 (citing '435 patent, 4:6–5:5, 6:37–7:9 ("*After* the VLAN member sets are created and the VLANs are mapped onto and associated with an appropriate MSTI, *then* the first feature of the present invention is performed [discussing limitations 1[c] and 1[d]]").).  According to WSOU, Defendants' arguments are "merely an excerpt from an exemplary embodiment."  ReplyBr. 11, n.2 (quoting '435 patent, 4:6–6).  But there is no suggestion—in an embodiment or anywhere else—that the invention somehow encompasses beginning to set port costs *before* creating and mapping the member sets of VLANs.

WSOU's specification citation does not relate to whether 1[d] must occur after 1[a] and 1[b], but actually relates to the "various scenarios" that can occur *during* step 1[b].  '435 patent, 4:6–8 ("Referring to FIGS. 4A-4D, there are shown various scenarios that can occur when VLAN 1 and VLAN 2 are mapped onto and associated with MSTI 1 and MSTI 2.").  Indeed, the paragraph referred to by WSOU actually further underscores why step 1[a] must be completed before step 1[b] begins.  As discussed in that paragraph, there are many possible ways a VLAN can be associated with an MSTI.  If 1[b] occurs before 1[a] is completed, a VLAN may be associated with an inappropriate MSTI.  *See id.*, 4:11–13 ("However as shown in FIG. 4B, VLAN 2 should not be mapped onto nor associated with MSTI 1[.]").  Thus, creating the MSTIs (1[a]) must be completed before VLAN member sets are created and associated with those MSTIs (1[b]) so that the VLAN is associated with the appropriate one of the MSTIs, and both must be completed before port costs are set (1[d]), consistent with the claim language and specification.

### B.     "ideally" (claims 7, 11, and 18)

| Defendants' Proposal | WSOU's Proposal |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

WSOU refuses to acknowledge, much less address, the multiple potential meanings of

"ideally" identified by Defendants.  DefBr. 26–27.  WSOU fails to explain why a POSA would understand with reasonable certainty whether "ideally" means "near" (and if so, how close), "required to be," or "not required to be."  Instead, WSOU unilaterally picks one meaning. ReplyBr. 12 (essentially arguing "ideally" means required to be).  But WSOU's chosen meaning renders "ideally" superfluous.  DefBr. 27–28.  The Federal Circuit has repeatedly rejected constructions resulting in superfluous claim language.  DefBr. 27; *see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Corp.*, 830 F. App'x 305, 310 (Fed. Cir. 2020) (rejecting construction that would render word "meaningless"); *Digital Ally, Inc. v. Taser Int'l, Inc.*, 810 F. App'x 873, 876 (Fed. Cir. 2020) (rejecting construction "render[ing] claim language superfluous").[10]

### C. "processing unit for setting the Internal Port Path Cost (IPPC) of one of the ports of one of said bridges within the MSTI to a high IPPC when said port is not part of the VLAN member set" (claim 8) / "processing unit for setting the IPPC of one of the ports of one of said bridges within the MSTI to a lower IPPC when said port is part of the VLAN member set" (claim 8)

| Defendants' Proposal[11] | WSOU's Proposal |
|---|---|
| This is subject to 35 U.S.C. § 112, ¶ 6. *Function*: setting the Internal Port Path Cost (IPPC) of one of the ports of one of said bridges within the MSTI [to a high IPPC when said port is not part of the VLAN member set / to a lower IPPC when said port is part of the VLAN member set] *Structure*: Indefinite | Plain and ordinary meaning |

WSOU's reply all but concedes that the claims do not recite sufficient structure.  ReplyBr. 13–14 (arguing only that structure is disclosed in the *specification*).  Faced with this undeniable proposition, WSOU argues that Section 112, ¶ 6 can be avoided by looking to the specification to

---

[10]  WSOU's citation to *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) does not compel a different result.  In *Power Mosfet*, the Federal Circuit determined "contact . . . directly" means the same as "contact" because in the context of the claim and patent, the adverb "directly" did not impose any additional restriction on contact.  *Id*.  Here, the patent and claims do not provide any information relating to how "ideally" relates to the setting of costs.

[11]  WSOU again lists the wrong construction under Defendants' proposal.  DefBr. 28 n.17.

find structure in the claims.  The Federal Circuit has squarely rejected this approach.  DefBr. 29

(discussing *MTD Prod. Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019)).  WSOU has no

response to *MTD,* failing to address it in its briefing.[12]

Alternatively, for the first time, WSOU argues that if this term is subject to 112, ¶ 6, then

the corresponding structure is "processor."  ReplyBr. 14.  But as Defendants stated, Section 112,

¶ 6 requires disclosure of more than a general purpose computer or microprocessor.  DefBr. 30

(citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015)); *see also WMS

Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999); *Dyfan LLC v. Target

Corp.*, 19-cv-179-ADA, 2020 WL 8617821, at *7 (W.D. Tex. Nov. 25, 2020).  Tellingly, WSOU

does not address any of these cases.

Perhaps recognizing its proposed structure is inadequate as a matter of law, WSOU argues

that "to the extent an algorithm is necessary" it is "recited in the claim language and in the above

recited portions of the specification."  ReplyBr. 14.  WSOU's citations, however, merely repeat

the functionality of the claim, or describe setting a method for "fully- or semi-automatically

configuring IPPCs" but do ***not*** provide an algorithm for fully- or semi-automatically ***setting port

costs***—which is the actual recited function.  Thus, the specification does not disclose an algorithm.

### D.    Entirety of claims 9–11 and 13–18

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| Indefinite | Plain and ordinary meaning |

---

[12]  WSOU again cites to *Samsung Elecs. Am. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1353 (Fed. Cir. 2020).  Br., 16, 18; ReplyBr. 13–14,  but ignores that, in *Samsung*, the party seeking to invoke Section 112, ¶ 6 ***admitted*** that the claimed "digital processing unit" had structure.  DefBr. 30. WSOU also relies upon *Panoptis Patent Mgmt., LLC v. Blackberry Ltd.*, Case No. 2:16-cv-62-JRG-RSP, 2017 WL 497571, *18–19 (E.D. Tex. 2017).  But in *Panoptis*, the court relied upon extrinsic evidence, *id*. at *18 (discussing three different dictionaries), and determined that the ***"[s]urrounding claim language*** recites more than merely" functional language, *id*. at *19.  WSOU does not argue that the ***claim language*** here imparts any structure to the claim.

WSOU does not address, let alone meaningfully discuss, the specific claim language of claims 9–11 and 13–18, which require actions not mere capabilities.[13]  DefBr. 31–32.  As just one example, WSOU refuses to explain, beyond conclusory attorney argument, how claim 9 and 16's requirement that the bridge "*operates* at layer 2" does not require actual performance.  DefBr. 31–32 (discussing why the specific language used in claims 9–11 and 13–18 shows that these claims recite method steps within non-method claims).  Instead, WSOU recycles the same two cases and arguments from its opening brief—these were fully addressed in Defendants' response.  Id. 32–33.  Thus, claims 9–11 and 13–18 are indefinite under *IPXL*.

## IV.   DISPUTED TERMS FROM THE '129 PATENT

### A.   "rate of change" (claim 3)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| Plain and ordinary meaning; not an instantaneous value measured at a fixed point in time | Plain and ordinary meaning |

Applicants could not have been clearer during prosecution: "An instantaneous value measured at a fixed point in time . . . *is simply not a rate of change*."  DefBr., Ex. 16, (5/2/07 App. Arg.) at 11; DefBr. 36.  WSOU's arguments in response to this textbook disavowal amount to nothing more than verbal and mathematical gymnastics in a failed effort to avoid this unequivocal disclaimer during prosecution, as well as the clear differentiation set forth in the specification between monitoring a "rate of change" as required by the claim and monitoring a "value."  Nothing

---

[13] WSOU objects to counting the *IPXL* issue for these claims as one term, citing *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002).  But *Schumer* addresses whether a party addresses each claim at issue, not whether similar claim terms and issues can be grouped together for counting purposes under a court's governing procedures.  WSOU does not contend that Defendants did not address each claim.  WSOU further protests that it did not treat claims 9–11 and 13–18 as "one term" for counting purposes.  Yet, the spreadsheet, *prepared by WSOU*, described WSOU's counting of Defendants' terms. DefBr., Ex. 14, at 5–6.  And, WSOU's counsel specifically stated that: "[W]e also will attach the spreadsheet *reflecting WSOU's accounting* on the claim terms."  Ex. 20 (2/1/21 Email)

could be more telling than the fact that in two briefs, WSOU still fails to even cite—let alone try to substantively address—this damning disclaimer in the prosecution history.

As an initial matter, rather than address the intrinsic evidence, WSOU starts its reply brief by faulting Defendants for not using extrinsic evidence to support its construction. ReplyBr. 16 n.5. The law is quite clear that where, as here, the intrinsic evidence is clear, extrinsic evidence is unnecessary. *See Phillips*, 415 F.3d at 1317. Here, Defendant's construction—while ***consistent*** with the plain meaning and relevant extrinsic evidence—is ***mandated*** by the intrinsic evidence, because applicants unequivocally stated what the claimed rate of change is, and is not.

WSOU's theoretical discussion of "rate of change" is completely divorced from the claim language and the rest of the intrinsic record. WSOU incorrectly argues—in the abstract—that while one way to determine the rate of change is to examine a variable at two different times, "rate of change ***could*** be calculated using different method." ReplyBr. 17. As an initial matter, WSOU does not offer any alternative for the fundamental mathematical concept—which is explicitly set forth in the specification and distinguished from measuring an instantaneous value—that determining the rate of change of a variable requires measuring the variable at two times. DefBr. 34–35. More importantly, the claim language itself is explicit on this point. Claim 3 of the '129 patent unequivocally requires: (1) "monitoring ***usage of a resource***"; to (2) "determine when a rate of change of ***the usage*** exceeds a first predetermined threshold." '129 patent, Cl. 3. Thus, the claim explicitly requires that the method monitor a particular thing—the usage of a resource— and determine whether the rate of change of that thing exceeds a threshold. That language unambiguously requires determining the rate of change of the "usage" by examining the "usage" over time. WSOU quotes this claim language and inexplicably concludes that "the claim does not recite monitoring a variable and then calculating rate of change based on change of that variable."

ReplyBr. 17.  But that is ***exactly*** what the claim language requires, where the variable is the "usage of a resource."

To the extent that the claim language would allow WSOU's theoretical notion of determining a rate of change of a variable without examining that variable at different times, the file history unambiguously precludes such a reading.  Applicants stated—without reservation or qualification—that "an instantaneous value measured at a fixed point in time" is "simply not a rate of change."  DefBr., Ex. 16, (5/2/07 App. Arg.) at 11.  Thus, WSOU's academic argument that rate of change can theoretically be measured in some way other than measuring a value over time— which WSOU is unable to identify—is a hand-waving attempt to distract from the prosecution history's explicit disclaimer.  ReplyBr. 18.

Defendants' construction—mandated by the claim language and the prosecution history— is also fully consistent with the specification.  Figure 4 illustrates that the rate of change is calculated by determining the difference of the value of the monitored variable at a current time and a prior time.  DefBr. 34–35.  Consideration of the claim language, the specification, and the prosecution history unequivocally mandates Defendants' construction—echoing applicants—that a rate of change cannot include an instantaneous value measured at a fixed point in time.

**B. "initiating a poll of resources in the nodes of the network by the management station in response to reporting from the node or a time interval being exceeded" (claim 3)**

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| Both of these events trigger a poll | Plain and ordinary meaning |

Contrary to WSOU's protestations, Defendants' construction is not a simple rephrasing of the claim language.  ReplyBr. 19.  Without clarity, this term could be improperly interpreted by a lay juror to have multiple different meanings.  Specifically, if left unconstrued, it is unclear whether the management station of the system need be capable of initiating a poll in response to *both* a

"reporting from a node" and "a time interval being exceeded" *or* rather, if the management station of the system need only be capable of initiating a poll in response to one of these two events. DefBr. 38–39.  The parties now agree that ***both*** is required.  PlBr. 22; DefBr. 38; ReplyBr. 18–19.[14]  Despite agreeing with Defendants as to what is required, WSOU still argues that this Court should not provide the requisite clarity for a jury.  ReplyBr. 18–19.  The court should reject WSOU's efforts to avoid explaining the parties' agreement to the jury.  *See ContentGuard Holdings, Inc. v. Apple Inc.*, 701 F. App'x 957, 963 (Fed. Cir. 2017) (affirming district court's claim construction decision because it "avoided possible jury confusion").[15]

As stated in its responsive brief, Defendants' concern is less with the exact language used to inform the jury of the "both" requirement, but rather that the jury is so informed.  Thus, Defendants suggest either their original construction, (or its alternative compromise proposal);[16] both provide the requisite jury clarity on the term.  DefBr. 39.  Because even WSOU could not make up its mind regarding the "plain and ordinary meaning" until its opening brief, the jury should be instructed as to that meaning.  Tellingly, WSOU offered no reason not to provide clarity.

---

[14] Unfortunately, WSOU put the parties through the process of briefing the term by refusing to explain what it understood the "plain and ordinary meaning" to be for this term prior to its opening brief; yet curiously states it was not required to so explain.  ReplyBr. 18 n.7.  Defendants asked WSOU to clarify its position, but WSOU refused.

[15] Construction will also help avoid a dispute later should WSOU improperly try to argue for the broader interpretation for infringement and the narrower for invalidity, this term requires construction.  *See International Glass Comp. Inc. v. U.S.*, 408 F.2d 395, 405 (1969) ("Plaintiff cannot have it both ways.  Claims cannot be broadly construed to make out infringement and narrowly construed to avoid invalidity.").

[16] Defendants would be satisfied with a construction that "management station" be construed as "a management station that is capable of initiating a poll in response to both reporting from the node and a time interval being exceeded."  DefBr. 39; ReplyBr. 19.

19

Dated:  April 14, 2021                By:  *Barry K. Shelton*
                                           Barry K. Shelton
                                           Texas State Bar No. 24055029
                                           bshelton@sheltoncoburn.com
                                           **SHELTON COBURN LLP**
                                           311 RR 620, Suite 205
                                           Austin, TX  78734-4775
                                           Telephone:  512.263.2165
                                           Facsimile:  512.263.2166

                                           Benjamin Hershkowitz
                                           bhershkowitz@gibsondunn.com
                                           Brian A. Rosenthal
                                           brosenthal@gibsondunn.com
                                           Allen Kathir
                                           akathir@gibsondunn.com
                                           Kyanna Sabanoglu
                                           ksabanoglu@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           200 Park Avenue
                                           New York, NY  10166-0193
                                           Telephone:  212.351.4000
                                           Facsimile:  212.351.4035

                                           Y. Ernest Hsin
                                           ehsin@gibsondunn.com
                                           Jaysen S. Chung
                                           jschung@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           555 Mission Street, Suite 3000
                                           San Francisco, CA  94105-0921
                                           Telephone:  415.393.8200
                                           Facsimile:  415.393.8306

                                           Ryan K. Iwahashi
                                           riwahashi@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           1881 Page Mill Road
                                           Palo Alto, CA  94304-1211
                                           Telephone:  650.849.5300
                                           Facsimile:  650.849.5333

                                           *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 14, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
