

# EXHIBIT 29

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
 2                          WACO DIVISION

 3   WSOU INVESTMENTS LLC          *
                                   *     June 1, 2021
 4   VS.                           *
                                   * CIVIL ACTION NO.W-20-CV-903
 5   JUNIPER NETWORKS, INC.        *

 6              BEFORE THE HONORABLE ALAN D ALBRIGHT
                    MOTION HEARING (via Zoom)
 7
     APPEARANCES:
 8
     For the Plaintiff:       Alessandra Carcaterra Messing, Esq.
 9                            Timothy J. Rousseau, Esq.
                              Brown Rudnick LLP
10                            Seven Times Square
                              New York, NY 10036
11
                              Sarah Gabrielle Hartman, Esq.
12                            Brown Rudnick LLP
                              2211 Michelson Drive
13                            Irvine, CA 92612

14                            Raymond W Mort III, Esq.
                              The Mort Law Firm, PLLC
15                            100 Congress Ave, Suite 2000
                              Austin, TX 78701
16
     For the Defendant:       Todd M. Briggs, Esq.
17                            Joseph E. Reed, Esq.
                              Quinn Emanuel Urquhart & Sullivan
18                            555 Twin Dolphin Drive, 5th Floor
                              Redwood Shores, CA 94065
19
                              B. Russell Horton, Esq.
20                            George, Brothers, Kincaid & Horton LLP
                              114 West 7th Street, Suite 1100
21                            Austin, TX 78701

22   Court Reporter:          Kristie M. Davis, CRR, RMR
                              PO Box 20994
23                            Waco, Texas 76702-0994
                              (254) 340-6114
24
             Proceedings recorded by mechanical stenography,
25   transcript produced by computer-aided transcription.
```

```
 1        (June 1, 2021, 9:01 a.m.)
 2        DEPUTY CLERK:  Motion hearing in Civil Action 6-20-CV-903,
 3    styled WSOU Investments LLC versus Juniper Networks,
 4    Incorporated.
 5        MS. HARTMAN:  Good morning, Your Honor.  Sarah Hartman
 6    from Brown Rudnick for the plaintiff WSOU Investments LLC doing
 7    business as Brazos Licensing and Development.
 8        Here with me are my colleagues, Timothy Rousseau and
 9    Alessandra Messing, as well as Ray Mort.  And from WSOU we have
10    Matt Hogan and Sheyanna Pietras.
11        THE COURT:  I'd like to welcome your client
12    representatives.
13        And for Juniper?
14        MR. BRIGGS:  Good morning, Your Honor.  This is Todd
15    Briggs.  With me is Joe Reed and also Russ Horton.  And from
16    Juniper Networks is Dave Saunders who is the director of
17    litigation.
18        THE COURT:  Welcome to Mr. Saunders as well.  I appreciate
19    everyone who is attending who is a client representative.
20        I'm happy to take up the motion to transfer.
21        MR. BRIGGS:  Good morning, Your Honor.  This is Todd
22    Briggs for Juniper.
23        So, yes.  We're here this morning to address Juniper's
24    motion to transfer the pending WSOU cases that have been filed
25    against Juniper to the Northern District of California.  And
```

1    before we get into the transfer factors and the arguments on

2    the transfer factors, I thought it might be helpful, Your

3    Honor, to give a little bit of background on the parties

4    briefly just to provide some context for the overall motion.

5         My client, Juniper Networks, is a networking company.

6    They make devices such as routers and switches.  They're a

7    company that is based in Sunnyvale, California which is in the

8    Northern District of California just outside of San Jose.

9         Juniper has been doing business for over two decades and

10   has been centered in the Northern District of California and in

11   Sunnyvale and has grown to be a fairly large company.

12   Presently there are approximately 2,800 -- 2,800 employees in

13   the Sunnyvale office.  Juniper also has some additional offices

14   throughout the world.  Two of the larger ones are in Bangalore,

15   India.  And also there's one in New Jersey.

16        Juniper really hasn't had a real presence in Texas at all

17   over the past two decades.  In 2019 Juniper did acquire a small

18   company that makes WiFi products that really have nothing to do

19   with this case.  And that company was based in Austin.  It's a

20   company called Mist Systems.  And so there was a small office

21   in Austin, you know, less than I think 40 employees, maybe

22   around 20 employees.  And they did nothing relating to this

23   case or the accused products in this case.  And Juniper's

24   actually closed that office.  So now Juniper has no offices

25   whatsoever in the Western District of Texas.  That happened a

1  couple of months ago.

2      So, you know, if this case were brought today, it would be

3  very difficult for WSOU to even establish venue over Juniper in

4  the Western District of Texas.  But I say that just so Your

5  Honor has context as to Juniper's presence in the Western

6  District of Texas.  It's something that just hasn't been there

7  in the past, and there was a brief period of time where Juniper

8  had this other company, but now Juniper is largely out of the

9  Western District of Texas.

10     You know, and that's in sharp contrast to many other tech

11  companies that you take, Dell, HP, you know, Apple, those kind

12  of companies.  They have very large presences in Austin.  But

13  Juniper's not one of those types of companies.  So that's some

14  background on Juniper.

15     WSOU, I'd like to just briefly give you a little bit of

16  background of what we've learned about WSOU.  So WSOU is a

17  relatively new company.  They purchased a large number of

18  patents, many of them from Alcatel Lucent.  And this occurred

19  over the past few years.  And WSOU was incorporated in Delaware

20  in May of 2019.  So, again, they're a -- I guess two years old

21  now.

22     A few months after they were incorporated in Delaware,

23  they were registered to do business -- or they registered to do

24  business in Texas, and in Waco in particular is where they set

25  up an office.  And this is an office that's -- I think it's

1  very close to Your Honor's courthouse in Waco.  It's a couple
2  blocks away, I've heard.  I haven't been there.
3      But there's really not much activity at the office at all.
4  That's what we've learned through discovery.  And you might
5  remember a few weeks ago we brought an issue to you relating to
6  the discovery, jurisdictional discovery, and a deposition we
7  took, a 30(b)(6) deposition of WSOU.
8      And what we learned in that deposition is WSOU only had
9  four employees at the time this lawsuit was filed back in
10  September of 2020.  The two primary employees are the founder
11  and chairman, Craig Etchegoyen, and their president, Stuart
12  Shanus.  Both Mr. Etchegoyen and Mr. Shanus live in Los
13  Angeles, California.  They don't live in Waco.  They don't work
14  in Waco.  In fact, they've never even been to the Waco office.
15      And these are the two individuals that are, I think,
16  managing these lawsuits and engaged in the licensing efforts of
17  the company.  And so we learned all of this, you know, during
18  the deposition a few weeks ago.
19      There is one employee, Mr. Hogan.  That's who we deposed.
20  He recently moved to Waco and he does some business out of that
21  office, but it's not particularly relevant or related to these
22  particular patents in this case.  And it's not even clear that
23  he's even really engaged in licensing or anything like that.
24  He's focused on other endeavors relating to the patents and
25  their business.

1      So, you know, I give you this as a little bit of

2  background just to show you the types of connections the two

3  companies have with, you know, the Western District of Texas

4  versus California.

5      So with that background, I'd like to get into the actual

6  factors that we need to examine to determine whether a motion

7  to transfer's appropriate or not in this case.

8      And Your Honor's very familiar with the eight different

9  factors.  There's four private factors, four public factors.

10  Based on the briefing, I think at this point only five of the

11  eight transfer factors are in dispute.  So those are the five

12  that I would like to just briefly focus on.

13      So the first factor is one of the private factors, and

14  that's the ease of access to sources of proof.  And, you know,

15  under Federal Circuit law, the Genentech case, for example, the

16  Federal Circuit has made clear that, you know, the bulk of the

17  relevant evidence in a patent case usually comes from the

18  accused infringer.

19      And that's very true of this case.  In this case, the bulk

20  of the relevant evidence will come from Juniper.  And the

21  source of that evidence is Sunnyvale, California, where

22  Juniper's been for over two decades.  You'll find technical

23  documents there.  You'll find source code relating to the

24  accused products there.  That's where the vast majority of

25  Juniper's relevant documentation was created and where it's

1    housed and stored.

2        Juniper has no technical documents or source code in

3    Texas.

4        And, furthermore, the Juniper employees that were in Texas

5    generally don't have access to the source code or the technical

6    documents that are relevant to this infringement action.

7    They're given to Juniper employees on a need-to-know basis,

8    kind of a permission-type basis.  Just because you're an

9    employee of the company doesn't mean you have access to all the

10   documentation.  And that's certainly true here, where the

11   employees in Texas did not have access to the relevant

12   documentation in this case.

13       And, again, that's because they were acquired primarily

14   from a smaller company that made completely different products

15   that are at issue in this case.

16       Now, in sharp contrast to that, WSOU really doesn't have

17   any documentation in Texas.  What we learned during the

18   deposition of Mr. Hogan is, in their office in Waco, they had

19   four boxes of documents, like banker's boxes.

20       So we asked when those documents were actually delivered

21   to the Waco office, and he told us in October of 2020.  He told

22   us he believed that they were delivered there in October of

23   2020 at the direction of Mr. Shanus, who is the -- again, the

24   president of WSOU.  And so apparently they now have, as of

25   October 2020, four boxes of documents sitting there.

1    Now, those are not even relevant to the transfer analysis

2  because these cases were filed before then.  So those documents

3  weren't there before then.

4    And then the only other documentation WSOU has pointed to

5  is some documents, which are some unspecified documents, in a

6  file cabinet in the Waco office.

7    So I would submit, Your Honor, that if you put on one side

8  of the scale on this factor WSOU's documents, these four boxes,

9  which really shouldn't even be considered, but even if we were

10 going to consider those, and you put on the other side of the

11 scale Juniper's documentation in Sunnyvale, there's really no

12 comparison.  So this factor, we would respectfully submit,

13 strongly favors transfer in this case.

14   The next private-interest factor that's in dispute is the

15 availability of compulsory process.  And I believe -- just to

16 cut to the chase here, I believe that this factor actually

17 favors transfer or is, at a minimum, neutral in this situation.

18 And one of the key points to keep in mind in this particular

19 case is that -- and I believe this comes from an opinion that

20 Your Honor wrote earlier this year, and that's basically when

21 no party has alleged or shown that any witnesses are unwilling

22 witnesses, a Court should not attach much weight to this

23 factor.

24   And I think that's the case here.  Neither party has

25 identified any unwilling witnesses at this point.  So, you

1   know, given that, it's likely that this factor should be

2   neutral.

3        What Juniper has identified though are four prior art

4   witnesses in the Northern District of California that we

5   believe would be trial witnesses in this case.  And those are

6   witnesses from the companies Futurewei, Newisys, IBM and

7   LinkedIn.

8        The only thing that Brazos has identified on the other

9   side are two inventors that are in Texas.  They're not within

10  100 miles of the courthouse, but they're in Texas.  And Brazos

11  has argued that under Rule 45 they could be compelled to

12  testify at trial, because they're willing to pay their

13  expenses.

14       And, you know, even if that were the case, they haven't,

15  you know, claimed that these witnesses are unwilling.  And

16  these are only two inventors on one of the six patents that's

17  been asserted in this case, or that's currently at issue in

18  this case.  So, you know, if you look at those two witnesses

19  versus the prior art witnesses in California, they sort of

20  cancel each other out a little bit, I would submit to you.

21       One point that I would want to note, though, too, is that

22  the two most relevant witnesses from WSOU, Mr. Etchegoyen, the

23  founder, and Mr. Shanus, the president.  Those two witnesses

24  are located and reside in California, not Texas.  And because

25  they are both officers of WSOU, they are subject under Rule 45

1    to the subpoena power of the Northern District of California,

2    because they reside in California.  And that's under Rule

3    45(c).  Those two witnesses are not subject to the subpoena

4    power of Your Honor's Court in Texas.

5         And I would submit to you that, you know, given that if we

6    were setting aside the issue of unwilling witnesses, that would

7    definitely tip this factor in favor of Juniper.  Because, you

8    know, it's possible that Mr. Etchegoyen or Mr. Shanus would

9    decide not to come to trial.  Maybe something didn't go well

10   during their deposition or something like that and they decide

11   not to come to trial.  We could not compel them to come to

12   trial if we were in the Western District of Texas.  And these

13   are the two most relevant witnesses at WSOU.

14        So in short, on this compulsory process factor, I would

15   submit, Your Honor, that this factor favors transfer or at a

16   minimum is neutral.

17        The next private-interest factor that's in dispute is the

18   cost of attendance for willing witnesses and the convenience of

19   the witnesses.  And I would submit that this factor strongly

20   favors transfer.  And as Your Honor's aware, the Federal

21   Circuit has stated in cases like Genentech that the convenience

22   of the witnesses is probably the single most important factor

23   in the transfer analysis.  So this is a very important factor.

24        And in this case we have a substantial number of witnesses

25   in the Northern District of California.  Again, Juniper is

1    centered there, 2,800 employees total.  They've been there for

2    two decades.  That's where the key witnesses are -- or a

3    significant number of the key witnesses are relating to the

4    accused products, you know, the sales of the accused products,

5    the marketing of the accused products.  All the -- all the

6    different aspects of a patent infringement case.  They're all

7    in the Northern District of California -- or a substantial

8    number of them are in the Northern District of California.

9         THE COURT:  Could you hold on just for one second?

10        MR. BRIGGS:  Yes.

11        THE COURT:  Just give me one second.

12        (Pause in proceedings.)

13        THE COURT:  Okay.  Can you all hear me?

14        You can continue.  Thank you.

15        MR. BRIGGS:  Okay.  Thank you, Your Honor.

16        So again, I was talking about the convenience of the

17   witness factor and explaining how Juniper's witnesses, the vast

18   majority of them, are in the Northern District of California.

19        And we've identified in our papers specific witnesses,

20   sales and marketing witnesses, two specific witnesses, their

21   licensing, and then various engineers who are in the Northern

22   District of California who have the relevant knowledge relating

23   to the accused aspects of the accused products for the various

24   patents in this case.

25        And again --

1      THE COURT:  Are you anticipating that they would testify

2  at trial?

3      MR. BRIGGS:  Absolutely.  Absolutely.

4      THE COURT:  I haven't had a single person in any of the

5  patent trials I've had where that's happened.

6      MR. BRIGGS:  Oh, that's interesting, Your Honor.  The very

7  last trial I had, we had the actual engineer that -- well, it

8  was on the other side but the actual engineer that created the

9  accused functionality testified at trial.

10      THE COURT:  Well, we had that in Roku, except that he'd

11  moved to Arkansas.  And he was --

12      MR. BRIGGS:  Oh.

13      THE COURT:  -- actually closer --

14      MR. BRIGGS:  Oh.  I mean, that can depend on time

15  constraints.  Because if you're subject to, you know, critical

16  time constraints, you may only have time to put your expert on;

17  but sometimes in defense, you want to have the jury see the

18  individuals who created the accused product and explain how it

19  works rather than the expert.  The testimony can be short, but

20  it can be powerful.

21      THE COURT:  Okay.

22      MR. BRIGGS:  So again, Juniper has lots of witnesses that

23  could potentially testify at trial in the Northern District of

24  California.  They have nobody in the Western District of Texas.

25      Now, WSOU, the best -- as best as we can tell, there's

1   really nobody in Texas from WSOU that would testify at trial.

2   The only person that's a possibility is Mr. Hogan, and we took

3   his deposition.  And again, he really didn't have any relevant

4   knowledge about the patents.  He doesn't deal in licensing.  I

5   think it's highly, highly unlikely that he would testify at

6   trial.

7       The two individuals that are much more likely that are

8   involved in licensing of the patents and the ones that were

9   involved in purchasing the patents and so on and so forth are

10  Mr. Etchegoyen and Mr. Shanus who, again, they live in Los

11  Angeles, California.  So they'd still have to travel to the

12  Northern District, of course, but it's closer.

13      So at the end of the day on this factor, you really -- on

14  one end of the scale you really have nobody in Texas except

15  Mr. Hogan.  And, again, I don't really see how Mr. Hogan would

16  be a potential trial witness.

17      And on the other end of the scale you have many different

18  Juniper employees and potentially Mr. Etchegoyen and

19  Mr. Shanus.  So I would say that this cost of attending --

20  attendance for willing witnesses strongly favors transfer.

21      Okay.  So those are the three private interest factors

22  that are disputed.  And I'd like to move on now to the two

23  public-interest factors that are disputed.

24      And the first one is the Court congestion factor.  And as

25  Your Honor's very aware, this is the factor that looks at the

—14—

1   Court congestion in the Northern District versus the Court

2   congestion in Your Honor's Court and compares the two.

3        And I think what's helpful here is to look at Your Honor's

4   recent order from the TikTok case.  This order came out on

5   May 21st, 2021.  And in that order Your Honor found that this

6   factor was neutral.  And I think that that is, you know -- I

7   think Your Honor should follow your analysis in TikTok.  That

8   was also a case that was being transferred from the Western

9   District of Texas to the Northern District of California.  And

10  it is -- I guess that's less than two weeks ago.  So, you know,

11  based on that, I think that in this case the same exact

12  analysis would apply.  I don't know why it wouldn't apply.

13       I also think that, you know, the Federal Circuit gave some

14  guidance on this factor late last year in the in re Apple case

15  where they reached a similar conclusion.  They found that

16  looking at, you know, the congestion in the Northern District

17  and the Western District of Texas, that this was a neutral

18  factor.

19       And it's also important to remember that this is a -- and

20  the Federal Circuit has said this, I think in the Apple case,

21  that this is one of those factors that's definitely on the

22  speculative side because many things can happen between now,

23  the early stages of a case, and trial.  And I know Your Honor

24  does your very best job to keep the trial date, but sometimes

25  that's difficult.  And so this is -- this is a factor that

```
1    tends to be on the very speculative side.

2         But at the end of the day, I think, you know, given Your

3    Honor's recent opinion in TikTok, this is a neutral factor.

4         And then, finally, the last of the disputed factors is the

5    local interest factor.  And what this factor analyzes is the

6    local interest in the two different venues we're comparing.  So

7    we have to look at the local interest in Texas and compare

8    those to the local interest in the Northern District of

9    California.  And I would submit, Your Honor, that when you do

10   that, this factor also strongly favors transfer.

11        The key on this factor is you have to look at the

12   connections between a venue and the events that give rise to

13   the suit.  That's the key language, the events that give rise

14   to the suit.  And that comes out of Federal Circuit cases such

15   as Hoffman-La Roche.

16        And so if you take a step back and you look at what events

17   gave rise to this suit, it's really the creation of the accused

18   products and the sale of the accused products.  And that

19   primarily happens out of Sunnyvale, California.  It does not

20   happen at all in Texas.

21        There are, of course, Juniper products sold in the Western

22   District of Texas.  But there's also Juniper products sold in

23   every district in the United States.  So that doesn't really

24   have a significant impact on this.  And I think there's also

25   Federal Circuit case law on that.
```

1    And, you know, the fact that WSOU chose to create an

2    office in Waco, Texas, that just does not submit -- or that

3    does not create a local interest.  The local interest is really

4    created by the alleged infringer and where they created the

5    accused products.

6    And I think that's especially true when the plaintiff sets

7    up an office and it's done simply to try and establish some

8    type of presence, you know, prior to filing suits against

9    multiple companies.  And I think the Federal Circuit recognized

10   this sort of issue in the in re Zimmer Holdings case at 609

11   F.3d 1378, when the Federal Circuit found that transfer was

12   warranted where the plaintiff's presence in Texas appeared to

13   be recent, ephemeral and an artifact of litigation.

14   And I think that -- I think if you look at the facts in

15   this case, especially after we took Mr. Hogan's deposition that

16   we submitted a lot of that testimony to Your Honor with our

17   papers, I think you'll see that this is a situation just like

18   that.

19   So in sum, of the five disputed transfer factors, I think

20   the relative ease of access of sources of proof strongly favors

21   transfer.  The availability of compulsory process favors

22   transfer or is neutral at a minimum.  The cost of attending --

23   attendance for willing witnesses strongly favors transfer.  The

24   Court congestion factor is neutral.  And the local interest

25   factor -- or the local interest factor strongly favors

-17-

1    transfer.

2         And so that is all I wanted to cover, Your Honor.  If you

3    have any questions, I'd be happy to answer them.  But, you

4    know, given that analysis, I believe this case is a very clear

5    candidate for transfer.

6         THE COURT:  Now I'll hear a response from WSOU.

7         MS. HARTMAN:  Thank you, Your Honor.

8         Your Honor, Juniper has not met its burden to show that

9    transfer is clearly more convenient.  I'm first going to

10   discuss Brazos' ties and then Juniper's, and I'll correct the

11   record or respond to what counsel said along the way.

12        Brazos is a Waco-based company, and it does have strong

13   local ties.  And it has those ties since before these cases

14   were filed.

15        It has witnesses in Waco, including Mr. Hogan, who will be

16   called as a witness as to Brazos' business operations, and

17   Brazos does have sources of proof in Waco and managed from

18   Waco.

19        Mr. Hogan did testify that documents relating to Brazos'

20   business are stored in a filing cabinet in Waco, which is

21   different than what counsel was referring to.

22        You know, given that Brazos is a Waco-based company with

23   witnesses in Waco, this case is very different from the Federal

24   Circuit decisions that are so heavily relied on by Juniper,

25   including in re Apple and in re Adobe and in re Tracfone.

1        Brazos chose Waco for its headquarters because Waco was a

2   burgeoning tech center with Baylor University as the anchor.

3   Brazos' founders wanted to intrench themselves in a place where

4   there was technology being developed that could potentially be

5   patented.  Brazos is operating its business there and has been

6   since before these cases were filed.

7        Simply because COVID-19 threw a wrench in travel over the

8   past year and a half to anywhere, including to Waco, does not

9   make that otherwise.

10       In addition to showing that it has witnesses and sources

11  of proof in Waco, Brazos has also identified at least two

12  inventors who live in Texas and would be subject to the Court's

13  compulsory process, as they would not incur substantial expense

14  to come testify.

15       Brazos has also identified other third-party inventors and

16  prosecuting attorneys who are located across the globe but

17  closer to Waco.

18       In addition, according to the most recent U.S. Federal

19  Court statistics, not relying solely on the Court's schedule,

20  the time to trial in this district is faster than in Northern

21  California.  Juniper has not shown that any of the transfer

22  factors favor transfer, much less that it's clearly more

23  convenient.

24       Juniper actually concedes that its sources of proof are

25  stored on servers located across the globe.  This does not

```
 1    favor transfer.

 2         Juniper also does not show that any witnesses are

 3    unwilling to testify, much less that any unwilling witnesses

 4    are subject to the -- only the compulsory process of Northern

 5    California.

 6         It is Juniper's burden to show unwillingness.  Juniper's

 7    prior art witnesses are unpersuasive for several reasons,

 8    including because Juniper does not show that any are unwilling.

 9    Three or four of them are also subject to compulsory process in

10    this Court.

11         Juniper does not identify -- or I'm sorry.  As to the

12    recent argument that counsel just made as to Mr. Shanus and

13    Mr. Etchegoyen, those are party witnesses not located in

14    Northern California and not considered under the unwilling

15    witness factor.

16         As to convenience of willing witnesses, Juniper does not

17    identify any third-party willing witnesses, and it identifies

18    employees with relevant knowledge but who are located across

19    the globe.

20         And finally, as to the local interest factor, to respond

21    to what counsel said, contrary to what counsel said, Juniper

22    actually has multiple offices in Texas.  I believe in Plano,

23    Houston, and its witness testified that it does still pay the

24    lease for the Austin office, and it definitely did and

25    maintained that office at the time this action was filed, which
```

20

```
1   is not in dispute.
2        Juniper also admits that it has at least 40 employees,
3   numerous resellers and distributors and a significant amount of
4   sales of accused products in this district and did so at the
5   time these actions were filed.
6        It also admits that at least some of the accused products
7   and functionality were designed and developed outside of
8   California.
9        In sum, Your Honor, many of the factors weigh against
10  transfer and none favor it.  Juniper has not satisfied its
11  burden to show that transfer is clearly more convenient.  So
12  Brazos respectfully requests that Your Honor deny Juniper's
13  motion to transfer.
14       Thank you.
15       THE COURT:  Any rebuttal to that?
16       MR. BRIGGS:  Your Honor, very brief -- this is Todd
17  Briggs, again -- very briefly.
18       Much of what counsel just argued, much of the facts and
19  the arguments that were made have been found time and again to
20  be irrelevant to the transfer analysis.
21       For example, the fact that Juniper's documents can be
22  accessed, you know, from different locations around the globe,
23  you know, the Federal Circuit has looked at that issue and
24  said, well, that might be true, but you still need to look at
25  where the primary source of the documents are for that factor.
```

```
 1   And that's undeniably in Sunnyvale, California.

 2        And counsel, again, is attempting to argue that Brazos has

 3   a very strong connection to Texas.  And I think Ms. Hartman

 4   actually said that they have witnesses, plural, you know,

 5   potential witnesses, plural.  I'm not aware of the -- anybody,

 6   other than Mr. Hogan; and again, Mr. Hogan is not involved

 7   in -- I think Ms. Hartman said he would testify about business

 8   operations.  I'm not sure what that is.

 9        The real heart and soul of WSOU with respect to this case

10   and any relevant testimony comes from Mr. Etchegoyen and

11   Mr. Shanus.  And they are in California, they're not in Texas.

12   Again, they've never even set foot in the office in Waco since

13   it opened.  And that's not because of COVID, as counsel

14   suggested.  They've been traveling.  Mr. Etchegoyen travels

15   back and forth to Hawaii all the time.  He could easily fly to

16   Texas.

17        So, you know, their business is not really conducted out

18   of that office.  It's done by Mr. Etchegoyen and Mr. Shanus in

19   Los Angeles.  And by the way, WSOU also has an office in Los

20   Angeles, in Santa Monica, California.  So it's not like their

21   only office in the United States is in Waco, Texas.

22        So, again, I'm very mindful of your time, Your Honor, and

23   I think we've addressed all the points today in my initial

24   argument and in our papers.  And if there are any specific

25   issues you would like me to address, I'd be happy to do so.
```

```
1          THE COURT:  I'm good.

2          Anything else, Ms. Hartman?

3          MS. HARTMAN:  Thank you, Your Honor.

4          Just to clarify, I did not actually discuss the access of

5   Juniper's documents.  I discussed that Juniper admitted that

6   its documents were stored on servers that are located across

7   the globe.

8          And I will also note that the fact that Brazos subleases a

9   small office space for Mr. Shanus to go to occasionally does

10  not -- outside of both districts, does not change Brazos'

11  connections to Waco.  And I will say that Mr. Etchegoyen and

12  Mr. Shanus have been to the office.  It's just that during the

13  last year and a half, during COVID, travel was difficult during

14  COVID.

15         So hopefully I addressed all of those points, and thank

16  you, Your Honor.

17         THE COURT:  Okay.  Well, we're working on this and we'll

18  get something out hopefully in the very near future.

19         Thank you, everyone, for your arguments this morning.

20         (Off-the-record discussion.)

21         THE COURT:  Those of you who are here for this motion to

22  transfer hearing, thank you.  You all can drop off and we'll

23  take up the Markman now.

24         (Hearing adjourned at 9:40 a.m.)

25
```

```
1   UNITED STATES DISTRICT COURT )

2   WESTERN DISTRICT OF TEXAS    )

3

4        I, Kristie M. Davis, Official Court Reporter for the

5   United States District Court, Western District of Texas, do

6   certify that the foregoing is a correct transcript from the

7   record of proceedings in the above-entitled matter.

8        I certify that the transcript fees and format comply with

9   those prescribed by the Court and Judicial Conference of the

10  United States.

11       Certified to by me this 6th day of June 2021.

12
                              /s/ Kristie M. Davis
13                            KRISTIE M. DAVIS
                              Official Court Reporter
14                            800 Franklin Avenue
                              Waco, Texas 76701
15                            (254) 340-6114
                              kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25
```